(110 App. Div. 117.)

### McMULLEN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 30, 1905.)

NEGLIGENCE—DEFECTIVE APPLIANCES.

Where the servant of one who contracted to deliver sand to a city, the sand to be shoveled into tubs and then to be hoisted and dumped by the city, was injured by the fall of a tub owing to the improper manner in which the city's employés had fastened a wire cable to the tub, the city was liable for the injuries.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence, § 27.]

On reargument. Affirmed.

For former opinion, see 93 N. Y. Supp. 772.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Terence Farley, for appellant.

Stillman F. Kneeland, for respondent.

INGRAHAM, J.   The appeal in this action was argued in the April term, and the judgment reversed and a new trial ordered; the opinion being reported in 104 App. Div. 337, 93 N. Y. Supp. 772.

Upon a further consideration of this case, on a motion for a reargument, it appears to the court that evidence in relation to the attachment of the rope to the socket had been overlooked, and we therefore ordered a reargument.   Upon such reargument the question presented on the appeal now before the court is to be determined on the original record.   On the affirmance by the Court of Appeals of Connors v. Great Northern Elevator Co., 90 App. Div. 311, 85 N. Y. Supp. 644 (180 N. Y. 509, 72 N. E. 1140), the liability of one furnishing machinery or appliances for the unloading of a boat by another contractor, where such appliances were not safe and proper for the purposes for which they were to be used, and where in consequence of such insufficient appliances a third party was injured, is established. This case therefore comes down to a question whether the evidence was sufficient to justify the jury in finding that the defendant, in furnishing these appliances for unloading sand for its use, furnished an unsafe and improper appliance for that purpose.   As I view it, the principle upon which this liability can be imposed is that recognized in Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311; Coughtry v. Globe Woolen Co., 56 N. Y. 124, 15 Am. Rep. 387, and applied by this court in Kahner v. Otis Elevator Co., 96 App. Div. 169, 89 N. Y. Supp. 185; and that is that a person, undertaking to furnish machinery or appliances for the use of others, assumes a duty to furnish a proper and safe appliance; and a negligent performance of such a duty, resulting in injuries to those engaged in doing the work or lawfully using the appliance, imposes a liability upon the person so furnishing the appliance for injuries sustained in consequence of such negligence. The obligation does not depend upon a contractual relation between the person injured and the person whose negligence caused the injury, but upon a failure to perform a duty assumed by one which results in injury to another.

It appears in this action that Murray & Co. made a contract with the city of New York to deliver sand at its dock T the foot of East Twenty-Fourth street.   Pursuant to this contract, Murray & Co. furnished at the Twenty-Fourth Street Dock a schooner loaded with sand; the sand to be delivered to the city under the contract.   This sand was to be delivered for the use of the department of docks of the city, and was to be—

"Delivered and placed on board of department scows, or upon piers or bulkheads, at such points on the North river, south of Sixtieth street, or on the East river south of 125th street, and in such quantities and at such times as may be directed by the engineer.   The sand required to be delivered at West Fifty-Seventh street or at the East Twenty-Fourth Street Yard will be shoveled into tubs to be furnished by the department of docks and ferries, by the furnisher, and the tubs will be tended and dumped by the furnisher. The department of docks and ferries will hoist the sand from the deck of the vessel or scows to the height required to dump the tubs into a car, which will be trammed and dumped by the furnisher, in the bins on the pier at West Fifty-Seventh street or at East Twenty-Fifth street, as directed by the engineer."

This schooner arrived at the dock at the foot of East Twenty-Fourth street on December 17, 1900. The plaintiff was employed by Murray & Co. on the schooner. The defendant furnished tubs and an apparatus for hoisting them, and into these tubs the plaintiff and other employés of Murray & Co. shoveled the sand. The tubs were then hoisted to a height necessary to dump the tubs into a car which transferred the sand to a bin on the defendant's dock, where it was stored for the use of the defendant. The hoisting was done by employés of the defendant. The plaintiff was engaged in shoveling sand into these tubs on Monday, December 19th, when one of the loaded tubs fell, striking him on the head, and causing the injuries for which he seeks to recover. The fall of the tub was caused by a wire rope pulling out of a socket which was attached to the tub. The method adopted by the defendant's employés in fastening the rope to the socket was to put the end of the rope through the socket and open up the strands of the rope so that the wires became separated from each other, then it was put into a furnace and heated, then melted metal was poured into the socket until it was flush with collar, and upon the cooling of the metal the union became completed. While this method is criticised by some of the experts called by the plaintiff, the evidence makes it quite clear that this was the usual method adopted; that it had been in use in the department for upward of nine years; and that no rope thus adjusted had ever pulled out of the socket. Nor did the plaintiff produce any one who ever knew of a rope having pulled out of a socket where the method before indicated was used. I am satisfied, if this method had been adopted, and the several strands of rope properly separated and leaded, that the defendant would have performed its duty and no liability would have resulted. An employé of the defendant who fastened this rope to the socket testified as to the method adopted by him in the performance of this duty. He stated that the proper method of fastening these ropes to the socket was as before indicated; and, if the evidence did not justify a finding by the jury that the method was not adopted, then I think the complaint should have been dismissed.

The evidence, however, which we overlooked on the former decision, was to the effect that in fastening the rope into the socket the defendant's employés did not adopt this method, as they did not separate the strands of wire rope after it was put through the socket, so that each wire became separated before the lead was poured in which bound the rope to the socket. The rope that was pulled out of the socket was exhibited to the jury and was also produced before us on the reargument. Witnesses for the plaintiff testified that the wire of some of these strands of wire rope had not been untwisted and separated, and from an examination of the rope itself it appears that the wires composing one of the strands had not been untwisted and separated, and, therefore, notwithstanding the testimony of the city's employé who did the work that he had unraveled the wire on each strand, there was a question for the jury as to whether or not this employé of the defendant did unravel the wire of at least one of these strands before pouring in the melted metal. It is quite evident that, if the wires of one complete strand had not been untwisted, the

constant working of the untwisted strand would tend to weaken the hold of the rope, on the socket. There is some evidence that before the accident there was an indication that this attachment had become weakened. Thus, there was evidence to justify the finding that the appliance furnished by the city, on the Monday morning that the unloading of the schooner commenced, was not in a safe condition for use. This unsafe condition was caused by the negligence of the defendant's employés in not properly untwisting the strands of the wire rope before inserting it into the socket and pouring in the melted metal and by its use for months in this condition. The jury having found after proper instructions that the method adopted by the defendant's employés in preparing this appliance for the use to which it was to be put had been negligent in making the connection between the rope and the socket, and that that negligence was the direct cause of the injury, that finding was sustained by the evidence.

As before stated, the negligence consisted in not carrying out what was considered by the defendant's witnesses to be the proper method by which this rope should be attached to the socket, namely, to separate the wires of all the strands before the melted metal was poured in to make the connection. There was no evidence that the rope was not a perfectly proper rope with ample strength to sustain many times the weight that was placed upon it in lifting this bucket of sand; and the rope itself did not break. The negligence consisted solely in not adopting the proper method in attaching the rope to the socket. The socket was all right, the rope was all right, and the method adopted by the department was, from the evidence, the proper method; but the difficulty is that that method was not carried out, and the defendant's employés negligently failed to unravel the wires composing at least one of these strands of rope; and the jury was justified in finding that the accident was caused by the failure of the defendant's employés to make a proper connection, and that, unless such a proper connection was made, the appliance furnished was not a proper and safe appliance for the purposes for which it was to be used. None of the requests to charge and to which the defendant excepted had any relation to this crucial question. The jury found against the defendant, and there was no error in refusing any request that the court refused.

No question of evidence was presented, and I think therefore that the verdict was sustained by the evidence.

Judgment and order appealed from should be affirmed, with costs. All concur.