" HUSTON v. DOBSON.

(Supreme Court, Appellate Division, First Department. June 10, 1910.)

1. MASTER AND SERVANT (§§ 116, 265*)—LIABILITY OF MASTER—STATUTES.
    Under Labor Law (Laws 1897, c. 415) § 18, re-enacted in Consolidated Laws, c. 31, prohibiting any person erecting a building from furnishing any unsuitable scaffold, a building contractor is under the absolute duty of constructing a safe scaffold to afford proper protection to the persons employed to work thereon, and the fall of a scaffold, in the absence of evidence of other producing cause, point to the omission of the duty sufficient to justify a finding of negligence.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 207, 877–908; Dec. Dig. §§ 116, 265.*]

2. MASTER AND SERVANT (§ 88*)—LIABILITY OF MASTER—STATUTES.
    Where a building contractor furnishes a scaffold, those entitled to use it may rely on the performance by the contractor of the duty imposed by Labor Law (Laws 1897, c. 415) § 18, re-enacted in Consolidated Laws, c. 31, requiring him to furnish a safe scaffold, and where one lawfully using the scaffold is injured in consequence of the negligence of the contractor, a liability exists independent of the actual employment of the person injured.
    [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 88.*]

3. MASTER AND SERVANT (§ 302*)—LIABILITY OF MASTER—STATUTES.
    Where the person in charge of the work of a subcontractor in the erection of a building, and intrusted with the general superintendence of the work and of the construction of necessary scaffolds, suggested to employés of the general contractor to use scaffolds erected by him to facilitate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the subcontractor's work, the employés were justified in using the scaffold because the arrangement was not outside of the authority conferred on such person and the subcontractor was liable for injuries to the employés caused by negligence in constructing the scaffold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1217–1221, 1225, 1229; Dec. Dig. § 302.*]

4. MASTER AND SERVANT (§ 332*)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

Proof that a subcontractor furnished an unsafe scaffold, which fell, injuring an employé of the general contractor standing on such scaffold or on an adjoining scaffold, and that the employé was on the scaffold at the suggestion of the general superintendent of the subcontractor, raise the question of the subcontractor's negligence, and the issue must be submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 332.*]

McLaughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Huston, administratrix of Thomas H. Huston, deceased, against Frank Dobson. From a judgment of dismissal, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

Martin S. Lynch, for appellant.
Frank V. Johnson, for respondent.

INGRAHAM, P. J. The plaintiff's intestate was employed by a general contractor who was engaged in the construction of the public library building on Fifth avenue and Forty-Second street. The deceased appeared to be in the general employ of the contractor, at times painting the iron work that supported the roof, and at times engaged in other occupations about the building. The defendant was working under a subcontract in inserting certain ducts on the inside of the roof of the building for the purpose of ventilation. To paint the inside of the roof of the building before the insertion of the ducts the plaintiff's intestate and one Benson had been in the habit of constructing for themselves a scaffold, painting in advance of the men employed in constructing the ducts. The defendant erected a scaffold close to the roof which seems to have been in two sections, one of which was erected in advance of the one upon which the men were at work to be used by the defendant's employés as the work progressed. There was a man named Walters employed by the defendant, who was in charge of the men engaged in inserting these ducts. Walters suggested to Benson and the deceased that he and the deceased should use defendant's scaffolds for painting instead of scaffolds which they were in the habit of swinging up from time to time as the painting progressed. Walters said to the deceased and Benson:

"Why don't you use my scaffold? It is safe, it is all right; and it is better for you to get through with the work and the both of us will work together—we will work together. I can keep a little ahead of you, and we will do the painting and the duct work right in together."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

123 NEW YORK SUPPLEMENT. (Sup. Ct.

· To that the deceased and Benson agreed. They left their scaffold on the floor, and when Walters had got his scaffold ready he told Benson and the deceased that they could go upon it to do the painting. After they had finished painting on that section they waited until Walters got another section of his scaffold up, going on with their work in other parts of the building. Finally, when Walters was ready he came to Benson and the deceased, and stated that he was waiting for them to do the painting. They then went up on his scaffold and did what they could there. On the day of the accident Benson and the deceased had been working putting in coke in the building. Shortly before the accident the deceased was seen with his paint brush going towards the scaffold. At that time the scaffold between sections 4 and 5 was in place and had been used for some time, and the scaffold between sections 3 and 4 seems to have been then constructed, and the men were engaged in putting up wooden horses on it from which the metal workers in the defendant's employ could get up close to the roof. One Aschoff, one of the defendant's employés who had been at work on this scaffold as a helper to the sheet metal workers engaged in putting up the ducts, and who had been upon the scaffold that fell, about 3 o'clock in the afternoon left the scaffold and went down for nails. When Aschoff left the scaffold the deceased was working on a ladder which was on the scaffold between sections 4 and 5. Several of the defendant's employés were then on the scaffold between sections 4 and 3, and this was the situation when these men were last seen at work. While the men were thus employed the scaffold between sections 4 and 3 fell, and with it the defendant's men, and at the same time the deceased who was working upon the section between 4 and 5 fell and was killed. There was evidence that after the accident the timbers that had been used to support the scaffold that fell were rotten. Whether the deceased at the time of the fall of this scaffold was upon the scaffold that fell, or was upon the adjoining scaffold that did not fall, and was in some way pulled over by the falling scaffold, does not appear. All that appears is that he was on the scaffold constructed and used by the defendant and fell to the floor with the falling scaffold, and was with the other men on that scaffold killed. Upon this evidence the plaintiff was nonsuited, and the correctness of such nonsuit is presented upon this appeal.

Section 18 of the labor law (chapter 415 of the Laws of 1897, reenacted in the Consolidated Laws as chapter 31 [Laws 1909, c. 36]), provides that:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

It was held in Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662, that this section is a positive prohibition laid upon the master without exception upon account of his ignorance or the carelessness of his servants. " * * * Its [the scaffold] fall, in the absence of evi-

dence of other producing cause, points to the omission of the duty enjoined by the statute upon the defendant to the plaintiff in its construction, and points to it with that reasonable certainty which usually tends to produce conviction in the mind in tracing events back to their causes, and thus creates a presumption. It is circumstantial evidence, and, if it does convince the jury, it justifies their verdict."

We start, therefore, with the proposition established by the evidence that there was upon this defendant an absolute duty to construct a safe, suitable, and proper scaffold to afford proper protection to the life and limb of the persons employed to work thereon, and that its fall, in the absence of evidence of other producing cause, points to the omission of the duty which is sufficient to justify a verdict of the jury that the defendant was guilty of negligence in furnishing this scaffold. It seems to me there could be no question but that if the deceased had been in the employ of the defendant there would have been a question presented which required its submission to the jury; but the deceased was not in the employ of the defendant, but was employed by an independent contractor for whom he was working, and not for the defendant. It is claimed, and this presents the only real question in this case, that as the defendant owed no duty to construct or maintain a proper scaffold for the deceased, he was not liable for the injuries caused by the deceased's death in falling from this illegally constructed scaffold. The evidence is quite sufficient, I think, to sustain a finding that Walters was in charge of the work in which the defendant was engaged in this building, and intrusted by the defendant with the general superintendence of the work. He directed the men employed by the defendant as to whom and how they should work, and had general charge of the construction of the scaffolds and of the manner in which the work was to be done. While thus engaged and apparently to facilitate the defendant's work he suggested to the deceased and Benson that in painting this roof they should work from the defendant's scaffold, and that Benson and the deceased accepted this suggestion and did their work from the scaffolds furnished by the defendant. It certainly cannot be said that such an arrangement was outside of the authority conferred upon the foreman in charge of the work. Whether Walters made the suggestion to facilitate the defendant's work or not is not material. It certainly justified the deceased and Benson in using the scaffold. All parties engaged in this transaction must be presumed to have been familiar with the provisions of the labor law and the obligations that it imposed upon an employer to furnish safe and suitable scaffolds. When such scaffolds are furnished, those entitled to use them had a right to rely upon the performance by the defendant imposed upon him by law; and, thus when a person lawfully using a scaffold or other appliances, is injured in consequence of the negligence of the person whose duty it is to erect such scaffold, a liability exists independent of the actual employment of the person injured. The duty of erecting this scaffold was imposed by law upon the defendant. In violation of his duty he caused to be erected for the use of his employés the scaffold which fell. From the neglect in the performance of this duty imposed by law the deceased sustained injuries

which resulted in his death; and from these facts there would follow a liability imposed by law for the damages sustained. If the deceased, instead of standing upon this scaffold, had been under it when it fell, engaged in the performance of his work in the building, it seems to me clear that the defendant would have been liable for the damages sustained by him, or, if death had followed, by his next of kin. If he had been working upon a scaffold of his own in close proximity to the defendant's scaffold that fell the defendant would have been liable for the injuries caused by the falling scaffold to one on an adjoining scaffold; or, if the deceased was upon an adjoining scaffold supplied by the defendant, and the scaffold which fell caused the deceased to fall from the adjoining scaffold, a like result, it seems to me, would follow. So, the facts that the defendant furnished an improper scaffold not safe for the use for which it was designed, the fall of that scaffold, the fall of the deceased from the place at which he was working which followed the fall of the defective scaffold, was evidence which required the question as to whether the death of the deceased was not due to the negligence of the defendant to be submitted to the jury. As was said in Robinson v. Con. Gas Co., 194 N. Y. 37, 86 N. E. 805:

"If proof of the occurrence shows that the accident was such as could not have happened without negligence according to the ordinary experience of mankind, the doctrine is applied even if the precise omission or act of negligence is not specified, and even when it does not appear whether the accident was owing to some act done or to some act not done. * * * Thus, the apparent cause of action may be want of care in constructing or maintaining or operating a machine, and if the occurrence indicates that the accident could not have happened without negligence in one or more of those respects, it speaks for itself, and establishes a prima facie case for the jury to consider, even if it does not appear specifically whether or in what respect the machinery was negligently constructed, maintained or operated."

And in the case of McMullen v. City of New York, 110 App. Div. 117, 97 N. Y. Supp. 109, it was said:

"The obligation does not depend upon a contractual relation between the person injured and the person whose negligence caused the injury, but a failure to perform a duty assumed by one which results in injury to another,"—

and the same principle applies where the injury is caused by the failure to perform a duty imposed by law.

I think, therefore, upon this evidence a question was presented as to the defendant's negligence, and whether the death of the deceased was caused by that negligence which should have been submitted to the jury, and for that reason the nonsuit was improper.

It follows that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, SCOTT, and DOWLING, JJ., concur.

McLAUGHLIN, J. I dissent on the ground that the defendant owed the intestate no duty with reference to the scaffold in question. It was not constructed for him to use, and the defendant did not expressly nor impliedly consent to his using it.