THOMAS JEFFREY, Appellant, *v.* H. W. MILLER, INC., Respondent.

**Labor Law — scaffolds — duty of employer to erect and keep safe scaffolds upon which employees are working — when employer liable for injury to workman caused by defective scaffold erected by other workmen.**

The statute (Labor Law, § 18; Cons. Laws, ch. 31) imposes upon an employer in the " erection, repairing, altering or painting of a house, building or structure," a non-delegable duty to furnish safe, suitable and proper scaffolds, constructed, placed and operated to give proper protection to the life and limb of those whom he employs to perform labor thereon. It takes away the defense based on the negligence of fellow-servants. The scaffold becomes a place to work instead of a mere detail of the work, and it is of no consequence whether it is relatively permanent or temporary in its character.

*Jeffrey* v. *Miller, Inc.,* 170 App. Div. 913, reversed.

(Argued December 3, 1917; decided December 11, 1917.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered August 7, 1915, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry M. Dater, Jay S. Jones* and *Edward J. Fanning* for appellant. It was error to dismiss the plaintiffs' complaint. (*Stewart* v. *Ferguson,* 164 N. Y. 555; *Quigley* v. *Thatcher,* 207 N. Y. 66; *Bohnoff* v. *Fischer,* 210 N. Y. 172; *Caddy* v. *I. R. T. Co.,* 195 N. Y. 415; *Storrier* v. *Mosier,* 221 N. Y. 237; *Feldman* v. *Mackay Co.,* 174 App. Div. 848; *Loesch* v. *L. I. R. R. Co.,* 165 App. Div. 753.)

*Joseph F. Murray* and *Robert M. McCormick* for respondent. A platform erected and taken down by the workmen themselves as the work progressed is not a scaffold within the purview of section 18 of the Labor Law. (*Caddy* v. *I. R. T. Co.*, 195 N. Y. 415; *Schaap* v. *Bloomer*, 181 N. Y. 125; *Stokes* v. *N. Y. L. Ins. Co.*, 112 App. Div. 77; *Sutherland* v. *Ammann*, 112 App. Div. 332; 190 N. Y. 514; *Williams* v. *F. Nat. Bank*, 118 App. Div. 555; *Clark* v. *N. Y. M.*, etc., *Co.*, 151 App. Div. 426; *Feldman* v. *McKay*, 174 App. Div. 848; *Brabson* v. *Fay Hunt Erecting Co.*, 152 App. Div. 212; *Hammond* v. *Union Bag, etc., Co.*, 151 App. Div. 776.) There was no negligence upon the part of the defendant in the furnishing or erecting of this scaffold. (*Cunningham* v. *Pierce*, 112 App. Div. 65.)

Pound, J. This is an action for personal injuries received by the plaintiff by reason of the collapse and fall of a scaffold. The plaintiff was an experienced plasterer in the employ of the defendant. A loft, or office building, was being constructed and the defendant was doing the plastering. The plaintiff commenced work on this building on the morning of the day of the accident. He was accompanied by Kennedy, another plasterer, who worked with him during the day. In order to do their work the plasterers were obliged to employ scaffolds which were made out of horses and scaffold planks which were furnished for the purpose. These scaffolds were erected in the following general method: The saw horses were set in the desired position; about three long planks called " ledgers " were placed across them; then other planks described as " sheeting " were laid across the ledgers to constitute the flooring of the scaffolds. The scaffold planks were about 13 feet long by 9 inches wide by 1¼ inches thick, and the saw horses about 7 feet high, so that the scaffold with its ledgers and scaffold

boards must have stood 7 feet and some inches above the floor of the room. To protect the workmen, guide planks were laid upon the flooring over and parallel with the tops of the horses to indicate that it was unsafe to go beyond such points. These scaffolds are customarily set up by the men who are to use them although on some jobs the erection, removal and re-erection are intrusted to laborers. They would be taken down and re-erected at intervals of about an hour. The various parts were not nailed or otherwise fastened together but were merely set in position. The plaintiff and Kennedy first erected such a scaffold in the rear of the room and gradually worked forward. Later in the morning two other plasterers came on the work, and also proceeded to erect a scaffold and to re-erect it as occasion required. Both scaffolds ran north and south with the width of the building; each was about 13 feet in width. The men who had come on later quit at 3 P. M., leaving their work uncompleted. The plaintiff and Kennedy, having finished with the scaffold they had erected, were directed by defendant's foreman, King, to go upon the scaffold upon which the men who had quit had been working, and finish up the work left undone by them.

Neither plaintiff nor Kennedy had had anything to do with the erection of the scaffold upon which they were thus ordered to go, nor had either of them ever been upon it until just preceding the accident.

The two scaffolds at the time King gave his order were some eighteen inches apart, and the plaintiff stepped from his own scaffold to about the middle of the other. The guard plank which should have been directly over the horse at the north end of the scaffold was some eighteen inches outside. The plaintiff stepped upon the scaffold beyond the horse but inside the guard plank. The boards tilted up and threw him to the floor, breaking his left arm.

On motion of the defendant made at the close of plaintiff's case the trial court nonsuited the plaintiff and dismissed his complaint. The plaintiff duly excepted and appealed to the Appellate Division where the judgment was affirmed by a divided court and he now appeals to this court.

Clearly the thing in question was a scaffold and the work being done was the erection of a building. (*Storrier v. Mosier & Summers,* 221 N. Y. 237.) The theory upon which the trial court proceeded was that scaffolds which are erected and taken down by the workmen themselves as the work progresses, are by reason of their temporary character not *scaffolds furnished by the employer,* under the provisions of section 18 of the Labor Law. (Cons. Laws, chap. 31.)

The question whether the defendant furnished the scaffold must be answered in the affirmative. The statute imposes upon the employer a non-delegable duty to furnish safe, suitable and proper scaffolds, constructed, placed and operated to give proper protection to the life and limb of those whom he employs to perform labor thereon. It takes away the defense based on the negligence of fellow-servants. (*Caddy v. Interborough R. Tr. Co.,* 195 N. Y. 415.) The scaffold becomes a place to work instead of a mere detail of the work (*Butler v. Townsend,* 126 N. Y. 105; *Bohnhoff v. Fischer,* 210 N. Y. 172, 174), and it is of no consequence whether it is relatively permanent or temporary in its character.

Not all scaffolding is included, but only that furnished in the " erection, repairing, altering, or painting of a house, building or structure." In *Schapp v. Bloomer* (181 N. Y. 125, 128) this distinction is clearly made and is vital to the decision. A careful reading of the case indicates that the court speaks of the structure there in question as " a scaffold " but holds that it was the *use* of the scaffold, in affixing shafting to the ceiling of a

factory, rather than in the *erection* of the building, which, like the use of such a scaffold to facilitate the work of hanging pictures or washing the walls of a room, took it out of the terms of the Labor Law. The doctrine of the case has no application here.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., CHASE, COLLIN, HOGAN, MCLAUGHLIN and CRANE, JJ., concur.

Judgment reversed, etc.