Benjamin Brenner, J.
A power plant was being built where the four plaintiffs fell from a scaffold while lifting a massive stone in behalf of a stonemason subcontractor. The defendant Caye Construction Company was a prime contractor which undertook to furnish the scaffold for the use of the masons. The defendant Wielandt Construction Company was the brick subcontractor which built it. The scaffold collapsed because it was defectively constructed and the direct cause of the tragedy was traced to a twisted part of an outrigger bracket. The stone fell with the plaintiffs, pinning the legs of two of them. Upon trial plaintiffs withdrew their claims based on common-law negligence and sought recovery solely for violation of section 240 of the Labor Law.
This is a second trial, the action having been previously tried when the jury rendered judgment for the defendant Long Island Lighting Company and disagreed as to the remaining defend *223 ants. The jury at this trial rendered a verdict against both remaining defendants totaling $260,000, three of the plaintiffs having been grievously injured. It had been instructed as follows: that there could be no recovery against either defendant for violation of section 240 of the Labor Law unless they found that plaintiffs were directed in the manner or method of their work as stonemasons; that while the defendants had contracted to furnish and construct the scaffold and actually did so provide and build the scaffold, such facts, standing alone, would not constitute direction of their work within the meaning of the Labor Law. Finally, the jury was instructed that even if they found that the defendants allowed the plaintiffs to make use of the scaffold, with knowledge by defendants of such use, this, too, would not constitute legally sufficient proof of direction of labor under the law.
I am satisfied that the evidence amply warrants a finding that the defendant Caye, the general contractor, directed plaintiffs in the performance of their labor. Various phases of the proof establish aspects of intervention therewith. Thus plaintiffs need not necessarily rely solely on Caye’s contractual obligation to furnish the defective scaffold for their labor. The evidence fully supports the conclusion that Caye not only co-ordinated work or supervised generally, but directed plaintiffs’ labor as well. A verdict against it, based on violation of the statute, is, therefore, fully supported.
As to the defendant Wielandt, the jury’s award rests on somewhat more than its erection of the defective facility. The following facts are implicit in the verdict and must be assumed to have been found: (1) that it built the scaffold under contract to do so; (2) that it was improperly constructed because of missing brackets and a defective one; and (3) that its foreman, Moseatur, when requested to do so, undertook to and actually laid additional planks thereon, suggesting to plaintiffs that they move two overlying and doubled-up planks along the scaffold where the area of stone work required additional support.
The sole question, then, is whether a finding of violation of section 240 of the Labor Law is warranted if based on the erection, repair and the suggested use of a defective facility upon which labor is performed. The answer is not readily at hand because there is much confusion in decisional law, construing the phrase “direction of work” as provided in section 240. What is more, some of the cases confound the principles of common-law negligence with that of violation of the statute.
The first law in this State dealing with improper scaffolding was enacted in 1885 and provided criminal penalties for “ know *224 ingly or negligently” furnishing unsuitable or improper scaffolding and various other devices used in erecting or repairing buildings (L. 1885, ch. 314). It did little to modify the common law since it required either knowledge or negligence. In 1897 the requirement of “knowingly or negligently” was removed from the statute and it continued in that form except for minor changes, until 1921 (L. 1897, ch. 415, § 18). That law provided as follows: “Scaffolding for Use of Employes. — A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed as to give proper protection to the life and limb of a person so employed or engaged.” It should be noted that the statute was worded in a negative fashion, that is, it only forbade the erection of improper devices. It was apparently intended to be applied only to those persons who actually furnished a defective scaffold, hoist, etc., whether or not actually constructed by such person, so that the emphasis was upon the aspect of furnishing as a prerequisite for liability and not on the employment or direction to perform labor. Additionally, there was little emphasis on direction to perform labor since most of the early cases involved an immediate employer as the defendant. This was so because there were no Workmen’s Compensation Laws until 1913.
The courts appear to have interpreted the intent of this provision of the Labor Law to make the appliances enumerated therein places of work and thus imposing the same kind of duty upon an employer who furnishes these appliances as the common law imposed upon an employer to furnish a safe place of work. (Jeffrey v. Miller, Inc., 222 N. Y. 135; Bohnhoff v. Fischer, 210 N. Y. 172; Stewart v. Ferguson, 34 App. Div. 515.) This was in direct contrast to the common-law rule which was that scaffolding and the other appliances specified in the statute were not places of work but mere details of the work for which the employer was not responsible if he furnished safe materials and employed a competent independent contractor to build the scaffold. If there was any defect which caused the injury the injured employees could look only to the party who actually constructed the appliance for damages and if the negligence of a fellow servant was responsible he could not recover at all. (Butler v. Townsend, 126 N. Y. 105.)
*225 Thus in Jeffrey v. Miller (supra) at page 138, Judge Pound, speaking for a unanimous court, gave this view of the effect that the statute had upon the common law: ‘1 The scaffold becomes a place of work instead of a mere detail of the work ”. Again, in Stewart v. Ferguson (supra) the court said at page 519: “ The making of the scaffold is no longer a detail of the work, the responsibility for which is imposed upon the servant, but the scaffold is regarded as a place furnished by the master upon which the servant is to work”. (Emphasis supplied.) That this became the adopted view is borne out by other cases. Some of the courts applied general common-law rules of negligence to the statute (Stewart v. Ferguson, supra, p. 520) as in common law or statutory (Labor Law, § 200) safe place of work cases. (Dittiger v. Isal Realty Corp., 264 App. Div. 279, revd. on other grounds 290 N. Y. 492.) The courts also ruled in these early cases that contributory negligence was applicable even where a violation of the statute was found (Gombert v. McKay, 201 N. Y. 27; McLaughlin v. Eidlitz, 50 App. Div. 518), just as it was applicable in cases based on a violation of the common law or statutory duty to furnish a safe place of work (Sgandurra v. 220 Estates, 185 Misc. 283, affd. 270 App. Div. 834, motion for reargument or leave to appeal denied 270 App. Div. 884; Schwartz v. Paul Tishman Co., 147 N. Y. S. 2d 71).
Thus in Gombert v. McKay (supra) the court said at page 31, referring to the 1897 law: ‘1 Under the statute in question the employer is left free to invoke the defense of assumption of risk or contributory negligence on the part of the employee although injured while acting as his agent or vice-principal in constructing the appliance, or any other defense permitted by the common law and not inconsistent with the statute.”
It seems reasonable to make the following interpretation of the earlier cases: (1) The appliances enumerated in the law were made places of work for which the employer was responsible if they were furnished defectively either by him or anybody else contracting with or working for him. It was a duty ho could not delegate once he undertook to furnish, but the emphasis was upon the aspect of furnishing just as the common-law duty of furnishing a safe place of work devolves upon the person actually furnishing the place of work. (2) Common-law defenses were applicable in actions based on a violation of the duty to furnish safe scaffolding, etc.
In this view of the statute the courts did not have to distinguish between an employer and any other person Avho actually did the furnishing (Quigley v. Thatcher, 207 N. Y. 66; Lester v. Graham, 157 App. Div. 651; Huston v. Dobson, 138 App. Div. *226 810), just as in an action involving a safe place of work either under the common law or under section 200 of the Labor Law it is the person who actually furnishes the place of work who assumes the duty of making that place safe (Olsommer v. Walker & Sons, 4 A D 2d 424, affd. 4 N Y 2d 793; Butler v. D. M. W. Contr. Co., 286 App. Div. 828, affd. 309 N. Y. 990; Gambella v. Johnson & Sons, 285 App. Div. 580).
In 1921 the statute (L. 1921, ch. 50, § 240) was re-enacted to read as follows: “ § 240. Safe scaffolding required for use of employees. 1. A person employing or directing another to perform labor of any kind in the erection, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes and other mechanical contrivances which shall be so constructed, placed and operated as to give proper protection to a person so employed or directed. ’ ’ Apart from the addition of demolition workers to the protection afforded by this statute (L. 1930, ch. 603) and the change of “mechanical contrivances ” to “other devices” (L. 1947, ch. 683) it remains as enacted in 1921. The 1921 Act differs from that of 1897 in the vital respect that it no longer merely forbids the supply of a defective facility but mandates the supply of a safe facility. It is an absolute nondelegable duty not only to provide a safe appliance when it is furnished but to furnish an appliance when necessary. Under the former provision of the Labor Law only one who undertook to furnish an appliance enumerated in the statute was required to furnish a safe one. If he refrained from furnishing any facility he was free from liability. Under the new act he has a duty to supply a safe one when required. (Sweeney v. Spring Prods. Corp., 257 App. Div. 104, affd. 282 N. Y. 685; Anderson v. 143 Linden Blvd. Corp., 258 App. Div. 887.) Significantly, the Court of Appeals has also ruled that contributory negligence is not available as a defense in an action based on a violation of the statute (Koenig v. Patrick Constr. Corp., 298 N. Y. 313).
. Thus the courts could no longer interpret the section as merely making the specified appliances places of work for which the person furnishing would be responsible. In fact in one case it was ruled that a scaffold did not constitute a ‘ ‘ place of work. ’ ’ (Butler v. D. M. W. Contr. Co., supra.) The focus consequently shifted to the words ‘ ‘ employing or directing another to perform labor ” and this became the pivotal factor in determining who was liable for a defective appliance under the act.
*227 Where the defendant is the immediate employer of the plaintiff there is no problem but such cases are few since such a plaintiff could seek his remedy only under the Workmen’s Compensation Laws (Workmen’s Compensation Law, § 11; Shanahan v. Monarch Eng. Co., 219 N. Y. 469) except where the employer fails to secure compensation (Johnson v. Johnson, 249 App. Div. 859). Nor is there any difficulty where the appliance which caused the injury is furnished by the employer and some third party is improperly sought to be held (Iacono v. Frank & Frank Contr. Co., 259 N. Y. 377, 381, 382; Gambella v. Johnson & Sons, supra, pp. 581-583). However, there does not have to be a formal employer-employee relationship in order to create liability (Koenig v. Patrick Constr. Corp., supra, p. 317; Kluttz v. Citron, 1 A D 2d 828, 953, revd. on other grounds 2 N Y 2d 379; Nasca v. St. Mary’s Roman Catholic Church Soc. of Dunkirk, 248 App. Div. 944, on reargument 249 App. Div. 792), but where there is no formal employer-employee relationship there must be direction to perform labor (Kluttz v. Citron, 2 N Y 2d 379, 383, supra; Koenig v. Patrick Constr. Corp., supra, p. 317; Olsommer v. Walker & Sons, supra; Weber v. State of New York, 53 N. Y. S. 2d 598).
The problem arises in determining what is required to make a defendant, who is not the immediate employer, a person who is ‘ ‘ directing another to perform labor ’ ’. In the only instance in which the Court of Appeals has spoken on this question it has said “ The words ‘ employing or directing another to perform * * * painting ’ mean just that.” (Kluttz v. Citron, 2 N Y 2d 379, 383, supra.) Unfortunately this does not give to a trial court much guidance as to what is required to constitute direction of work or in charging a jury on what constitutes such direction. Moreover, this case held the statute to be inapplicable to the facts there found.
The difficulty is not eliminated by the other decisional law dealing with the problem. A recent case holds that ‘ ‘ the test of direction is supervision relative to the manner or method" of performance of the work to be done ” (Blackwood v. Chemical Corn Exch. Bank, 4 A D 2d 656, motion for reargument or for leave to appeal denied 5 A D 2d 768, motion for leave to appeal dismissed. 4 N Y 2d 802); another says that it is the relationship created by the conversations which are said to constitute the direction (Mendes v. Caristo Constr. Corp., 5 A D 2d 268, clarified 6 A D 2d 673, affd. 6 N Y 2d 729). Still another holds that a direction to “ get on the scaffold ” is sufficient (Gambella v. Johnson & Sons, supra, p. 581) and it was also held that specific instructions as to the doing of the work are required *228 (Olsommer v. Walker & Sons, supra, p. 429). Mere permissive use of a facility is not sufficient direction of work to satisfy the requirement of the statute (Glass v. Gens-Jarboe, Inc., 280 App. Div. 378, affd. 306 N. Y. 786) nor is mere general supervision or co-ordination of the work by an owner or general contractor sufficient to constitute direction (Blackwood v. Chemical Corn Exch. Bank, supra). Additionally, even where direction to perform labor is found, if the appliance furnished is changed without the knowledge or authorization of the person who has furnished said appliance there is no liability under the statute (Kluttz v. Citron, 2N Y 2d 379, supra).
From the welter of decisions on this subject, none of which gives clear guidance to a trial court, the following pattern seems to emerge: The creation, supply or permissive use of a faulty facility belonging to an owner or contractor, without more, will not constitute direction of the manner or method of labor legally sufficient to create liabilty under the act; but if some instruction or advice is given concerning the use of the faulty facility so created, supplied or permitted to be used then there is the ingredient of direction sufficient for liability under the act. It seems no more than just that if a worker is injured after being provided with and told how to make use of a defective facility for the performance of his work, he should be protected by the Labor Law on the theory that he is thereby being directed in the course of his labor.
It will be remembered that plaintiffs here have abandoned their right to recover under the common-law principle that when one supplies a defective facility when he knew or should have known of its condition and gives assurances of safety to a person using such facility he then becomes liable (Broderick v. Cauldwell-Wingate Co., 301N. Y. 182). Under such a common-law theory contributory negligence would be a defense (Broderick v. Cauldwell-Wingate Co., supra). However, this is a suit based solely on the Labor Law, which, as seen, requires proof of direction of work. The evidence established that the defendant Wielandt not only made the scaffold which had been used by its own workers but then proceeded to repair it for plaintiffs’ specific use with instructions to them to shift doubled-up planks on what continued to be a defective scaffold throughout the course of its use by plaintiffs. The jury’s finding of violation of section 240 of the Labor Law by the defendant Wielandt is, therefore, warranted upon the evidence.
The awards to plaintiff Petrone of $125,000, to plaintiff Mohr of $30,000 and to plaintiff Cole of $5,000 are fully supported. The award of $100,000 to plaintiff Kaiser is not. While the *229 latter plaintiff sustained a crippling injury, it is not clear from the medical testimony whether the proposed further operative procedure will reduce pain or wholly correct what now appears to be a fixed equinus position of the foot which, because the ankle joint has degenerated, is responsible for Kaiser’s halting gait. It is, however, uncontroverted that the fusion of the tibia and fibula, while capable of bearing weight, is permanent. These, at least, afford a basis for estimating injuries, pain and suffering and do warrant a substantial recovery. The huge sums suggested to the jury as Kaiser’s lessened earnings were, however, exaggerated. He did return to lighter work a year following the accident so that the forecast of heavily reduced earnings from those realized in the hard, though remunerative labor to which he has thus far been accustomed may have unduly swayed the jury. Earnings from hard labor are subject to many contingencies including cessation therefrom in later and less vigorous years; nor is it possible to rely or prior awards for similar injuries since a host of circumstances play a part in their fixation. Lawyers, judges and jurors can do no more than make an intelligent guess as to the extent of pain and losses consequent upon personal injury, as no slide rule is available to accurately gauge them. But in viewing the contested Kaiser award the verdicts for the remaining plaintiffs, if taken into account, are helpful. Where several plaintiffs recover in the same action for injuries sustained under identical circumstances, there should be no obvious or glaring disproportion or unfair relationship among the several awards based on all aspects of relative injuries and losses. Such an obvious disproportion exists here if the Kaiser award were permitted to stand, but, more important, it appears to be to be very substantially unfair and, on all the evidence, excessive.
It was suggested, ever so delicately, that if there need be a revision of the award, it should be left to an appellate court, but as Trial Judge I have for three weeks observed Kaiser’s free body movements though halting gait and generally healthful appearance. Surely, such matters, indicative of the severity of the injuries, cannot readily be gleaned from a cold record on appeal. They demand the exercise by the Trial Justice of his discretionary power to reduce the award.
The motion to set aside the verdict for the plaintiff Kaiser is granted and a new trial as to said plaintiff is directed in his action, based on either common-law negligence or on violation of the Labor Law, or both, unless said plaintiff consents to a reduction of the award in his favor to the sum of $75,000, in which event the motion is denied. All other motions made by *230 the parties, inclusive of the motion to increase the award to Cole, made before and after rendition of the verdicts, are denied. As to the cross claims, since the liability of each defendant is based on the violation of an absolute and nondelegable statutory duty to furnish a safe scaffold, the cross claim of each defendant against the other is not tenable (Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N. Y. 412) and, therefore, dismissed. Enter judgments accordingly.