MIGUEL RAMOS et al., Respondents, *v.* S. PETER SHUMAVON et al., Doing Business as SHUMAVON & BUCKLEY, Appellants, et al., Defendant.

First Department, March 24, 1964.

*Edmund F. Lamb* of counsel (*William E. Fay III* with him on the brief; *Purdy, Lamb & Catoggio,* counsel to Lawless & Lynch, attorneys), for appellants.

*Benjamin H. Siff* of counsel (*Harry H. Lipsig* and *Seligson, Rothman & Hamada,* attorneys), for respondents.

*Morris B. Abram* of counsel (*Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Consulting Engineers Council and The New York Association of Consulting Engineers, *amici curiæ.*

*Per Curiam.* This action, for personal injuries and wrongful death, arose out of an accident which occurred during the construction of a portion of the Cross-Bronx Expressway. The particular portion of expressway involved was being constructed by Johnson, Drake & Piper, Inc., the general contractor, under a contract with the State of New York. The plaintiff, Ramos, and the intestates, Flynn and Luostarinen, were carpenters employed by the general contractor while the defendants Shumavon and Buckley were the State-engaged supervising engineers.[*]

On August 11, 1959, Ramos, Flynn and Luostarinen were working inside temporary forms which had been erected by the general contractor in preparation for the pouring of the concrete which was to constitute the retaining walls bordering the roadway. These forms collapsed, causing injury to Ramos and the death of Flynn and Luostarinen.

The jury rendered a verdict against the engineers in the aggregate amount of $400,000 and judgment was subsequently entered thereon. It is contended on this appeal that the complaint against the engineers should have been dismissed, or failing of such dismissal, it is urged that a new trial is required because the verdict is contrary to the weight of the evidence and because of trial error.

We conclude that on this record the defendants are, as a matter of law, free of any negligence and that the complaint accordingly must be dismissed.

There is no need, for the purposes of this opinion, to relate in technical detail the manner of the construction of the forms, or the reasons for their collapse. It suffices to state that the record does permit of a finding that the collapse of the forms was due to their improper erection and maintenance by the general contractor. The only question to be determined is whether the defendants, as supervising engineers, may be held to have been negligently responsible for what occurred.

---

[*] The City of New York was also made a party defendant. The complaint as against it was dismissed upon plaintiffs' opening and no appeal was taken from such dismissal.

The only basis upon which the judgment can be sustained — and the plaintiffs so concede — is if the contract between the defendants and the State of New York imposed upon the former such a duty towards the employees engaged in the expressway construction as to make defendants responsible for the collapse of the forms and the resultant injuries and deaths.

There were two agreements with which we must concern ourselves in this connection. First, there is the agreement between the general contractor and the State of New York. The second is the agreement between the defendants and the State. It is essentially the position of the plaintiffs that these two documents, read together, imposed a duty upon the defendants to "engage in such supervision and inspection as would promote the safety of the men working on the job." It is contended that the defendants breached such duty in failing to act to prevent the collapse of the forms.

It should be noted at this point that the plaintiffs do not charge that "any act, order or directive of the defendants had affirmatively created a dangerous condition." There is thus no claim of negligence by an act of commission. All that remains upon which liability may be bottomed are alleged acts of omission — the failure to inspect, advise or take other steps to insure that the forms were properly erected and the men working therein properly safeguarded.

The issue thus presented becomes a rather narrow one. Do the contract documents create such a duty upon the defendants as to place them in the class of those held liable for the failure to perform contractual obligations to affirmatively insure the safety of workmen on the job? (See *Semanchuk* v. *Fifth Ave. & 37th St. Corp.*, 264 App. Div. 329, mod. on other grounds 290 N. Y. 412; *Vollstedt* v. *Joseph A. Mollen, Inc.*, 238 App. Div. 705.) If they do, then the defendants may be held liable to the plaintiffs. If they do not, then the defendants are not liable and the judgment must be reversed and the complaint dismissed. As aforesaid we find the documents fail to create a duty upon defendants sufficient to cast them in liability.

In order to sustain the plaintiffs' position we must find in the contracts not only a clear obligation on the part of the defendants to perform in the area in question, but we must also find an intention that for a breach of such obligation the defendants are to be liable to the workmen on the job (cf. *Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 164; *Rigney* v. *New York Cent. & Hudson Riv. R. R. Co.*, 217 N. Y. 31, 37; *Smyth* v. *City of New York*, 203 N. Y. 106).

Having the aforesaid considerations in mind let us examine the pertinent provisions of the contracts in question. In attempting to spell out the requisite duty the plaintiffs point to article 1 of the agreement between the State and the defendants. This provision provides as follows: "ARTICLE 1. Work to be Done and Contract Documents. The Engineer shall ascertain the standard practices of the State prior to the execution of any of the work required by this Agreement. All work under this Agreement shall be performed in accordance with these standard practices and the provisions of the contract documents. The contract documents shall be deemed to include this Agreement with accompanying schedule or schedules, the said Contract and any supplements thereto, the 'Public Works Specifications of January 2, 1957', with any addenda thereto, the plans of the project, any addenda to the plans and project, and the provisions required by law to be inserted in the Agreement as set forth in Schedule 'B' which is attached hereto and made a part hereof."

Plaintiffs place great stress upon the clause which requires that the work "shall be performed in accordance with these standard practices and the provisions of the contract documents." Without being specific, they appear to argue that the necessity of following "standard practices" somehow created an obligation to insure the safety of the workmen. However, before such a conclusion may validly be made it must be demonstrated that the "standard practices" of the State encompass such subject matter. We find no reference by the plaintiffs to any portion of the record which makes such demonstration nor does there appear to be any such proof in the record.

It is also pointed out by plaintiffs that the contract required that the defendants perform their work under the agreement "in accordance with * * * the provisions of the contract documents." They then refer to that portion of the agreement between the State and the contractor which provides: "CONDUCT OF WORK. The Contractor shall, by working methods and orders of procedure subject to the approval of the Engineer, conduct the work in the most expeditious manner possible, having due regard for the safety of persons and property and safety for traffic, and for reducing to a minimum the encumbrance of the streets and site of the work with construction materials." It is urged that this language creates a duty in favor of the workmen on the job. Even if we assume that this paragraph were a part of defendants' obligations — and it is not clear that it is — it imposes no duty with respect to the contractor's employees. The language is such as to permit of no interpretation other than

it was designed to protect members of the public at large — not the workmen on the job. In any event and particularly since the defendants were not parties to the agreement wherein this language is found, any duty intended to be created in favor of the workmen should have been clearly expressed. The language of the provision in question fails to meet this test.

The plaintiffs point to no other provisions of the " contract documents " — nor do we find any — as could be said to impose an obligation upon the defendants to insure the safety of the workmen. As we read the pertinent documents the defendants were hired, in effect, to see to it that the State obtained the end product it bargained for — a properly constructed portion of the expressway. There being no contractual duty regarding the safety of the workmen the judgment against these defendants may not stand and the complaint must be dismissed.

While, in view of our determination, we need not pass upon the other points raised by the defendants which, if sustained, would require that a new trial be had, we do agree with the defendants' position with respect thereto. Assuming there was an issue of fact as to whether the agreements did render defendants responsible for the safety of the workmen we find the jury's resolution of the question in favor of such responsibility to be contrary to the weight of the evidence.

Accordingly, the judgment should be reversed on the law and on the facts, with costs, and the complaint dismissed.

BOTEIN, P. J., BREITEL, RABIN, STEUER and BASTOW, JJ., concur.

Judgment unanimously reversed, on the law and on the facts, with costs to the appellants, and the complaint dismissed.