■ ARTHUR I. AMERMAN, Respondent-Appellant, v. LIZZA & SONS, INC., et al., Appellants-Respondents, et al., Defendant. VITO TURSI, Respondent-Appellant, v. LIZZA & SONS, INC., et al., Appellants-Respondents, et al., Defendant. — Plaintiffs in two actions, consolidated for trial, one for death of an infant, Jeffery Amerman, and the other for personal injuries sustained by two infant plaintiffs, William and Robert Tursi, both resulting from defendants' negligence, appeal (1) from so much of an order of the Supreme Court, Suffolk County, entered June 10, 1971, as granted the motion of the defendant, Lizza & Sons, Inc., (a) to set aside the jury verdict of $125,000 for the wrongful death of Jeffery Amerman as excessive unless the said plaintiff stipulated to reduce the verdict to $23,500; and (b) to set aside the jury verdicts of $15,000 and $5,000 to William Tursi and Robert Tursi, respectively, as excessive, unless plaintiffs stipulated to reduce the verdicts to William Tursi and Robert Tursi to $7,500 and $3,500 respectively; and (2) from an order of the same court entered June 21, 1971 denying plaintiffs' motion to reargue that portion of defendants' motion to set aside the verdicts for the plaintiffs in the Tursi action on the ground that facts, relating to the submission of school records to the jury may not have been brought to the attention of the jury or that there had been a misapprehension as to such facts. The defendant, Goodkind & O'Dea cross-appeals from those parts of the order entered June 10, 1971 which (1) fail to set aside the verdict as against it, (2) fail to reduce the verdicts further than it did; and (3) which limit any new trial to damages only if the plaintiffs fail to agree to the provisions of the order. The defendant, Lizza & Sons, Inc., cross-appeals from those parts of the order entered June 10, 1971 which (1) declined to dismiss the complaints against it and (2) directed any judgment against it. Order entered June 10, 1971 modified, on the law, (1) by striking from the third decretal paragraph thereof the figure $23,500 and substituting therefor the figure $35,000, and extending the time provided therein within which the plaintiff, Amerman may stipulate in writing his consent to such reduction of the verdict for the wrongful death of Jeffrey Amerman from 20 days to 30 days; the plaintiff shall serve and file the written stipulation consenting to the reduction of the verdict and to the entry of the amended order in the office of the clerk of the trial court; (2) by striking out the fourth decretal para-

graph and by substituting in its place a new fourth decretal paragraph to read "ORDERED that the motion to set aside the awards of $15,000 and $5,000 to WILLIAM TURSI and ROBERT TURSI, respectively, is denied", and (3) by striking from the fifth decretal paragraph the words "parties to agree to the awards as reduced" and substituting therefor the words "the plaintiff ARTHUR I. AMERMAN to agree to the award as reduced". As so modified, order affirmed, without costs. Plaintiffs' appeal from the order entered June 21, 1971 denying their motion for leave to reargue that portion of defendants' motions to set aside the verdict with respect to plaintiffs in Action No. 2 (the Tursi action), is dismissed as academic in view of this court's modification of the fourth decretal paragraph. Furthermore, no appeal lies from an order denying a motion for reargument of a prior motion (*Matter of Macku,* 29 A D 2d 539). The major issue raised in this appeal is whether section 16 of article I of the Constitution of the State of New York, which provides: "The right of action now existing to recover damages for injuries resulting in death, shall never be abrogated; and the amount recoverable shall not be subject to any statutory limitation." makes unconstitutional the provisions of section 132 of the Decedent Estate Law (now EPTL 5-4.3) limiting damages in such an action to "pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." We find that it does not. There are also a number of subsidiary factual and legal issues. One is whether the jury's verdicts for the plaintiffs were excessive. Another is whether both defendants were negligent and liable therefor and whether only one or both of the defendants showed liability for the injuries suffered by the plaintiffs. One of the defendants contends that the verdicts, even as reduced by the trial court, are excessive and the plaintiffs seek reversal of the action of the trial court in reducing the verdicts. The issues set forth above arose in the following context: The injuries suffered by the three infant plaintiffs resulted when on the afternoon of January 9, 1963 they fell through the ice covering a pool of water which had accumulated in an excavation made by the defendant contractor, Lizza, in connection with the construction of an improvement of Deer Park Avenue in Babylon, Long Island. Part of the improvement consisted of the construction of a surge basin and a concrete flume for handling storm waters. The pool of water which varied in depth between 42 and 47 inches was bordered on one side by a large steep-sided high mound of top soil. The area containing the pool and the mound was unfenced at the time of the accident and there was no watchman or signs warning of danger. One of the three children who fell through, Jeffery Amerman, a four year old, drowned before he could be rescued; a second, Robert Tursi, also four years old, the younger of the two Tursi brothers, was unconscious when rescued but was revived, the third, William Tursi, nine years old, was able to help his brother but had also to be rescued. Both Tursi boys were hospitalized briefly and showed no continuing physical injuries but there was expert medical testimony that they suffered long-term psychic injuries manifested by nightmares, bed-wetting, and in the case of the younger Tursi boy, fear of water, and in the case of the older boy, adverse personality changes. The reconstruction of Deer Park Avenue was begun by the defendant Lizza in the summer of 1962 under a contract with the State. In carrying out the contract, Lizza cleared the area of trees and undergrowth, dug the excavation in which the pool, into which the plaintiff infant fell, accumulated and built the storage mound of top soil alongside the water-filled excavation. Work continued until November when it became too cold to work. Lizza did its work under

the supervision of Goodkind & O'Dea, an engineering firm, which also had a contract with the State to supervise the project to insure that the contractor complied with the requirements of its contract. The testimony established that under its contract Lizza was responsible for the safety of the general public and for the protection of persons who for any reason entered within the limits of the construction project and assumed full responsibility for personal injuries and property damage which might result from the work done by it on the project. Under the contract all excavations beyond a minimum depth of five feet were to be fenced in. The defendant, Goodkind & O'Dea, under its contract with the State, was responsible for engineering supervision and inspection of the project and maintained a full-time resident engineer on the project site whose duty it was to inspect the job to see that it was done according to plans and specifications and to issue orders to the contractor when it did something contrary to specifications. His duties also included inspection for safety compliance. This witness also testified that throughout the period of construction work on the surge basin no fence or barricade was placed around its perimeter prior to the day after the accident even though constant pumping was required in the sump area in October, 1962 because of the high water table. He also testified that he gave orders to Lizza pursuant to the contract and that the contract called for installation of a chain link fence around the area when the contractor was going to excavate the sump for the surge basin. There was also testimony by an engineer employed on the project by Lizza that on a number of occasions he had seen children playing on the top soil mound prior to January 9, 1963, the day of the accident. Each defendant-appellant-respondent sought to exculpate itself by claiming the other controlled the project and was solely responsible for any negligence resulting in the injuries sued for. In addition, the defendant-appellant-respondent, Goodkind & O'Dea sought to avail itself of an exculpatory clause in its contract with the State providing that nothing in the contract should give to the third parties any right of action against the two parties to this contract "beyond such as may legally exist irrespective of" the contract. The plaintiffs' constitutional contention is invalid. The Record of Debates of the Constitutional Convention of 1894 makes it clear that section 16 of article I (formerly art. I, § 18) was added to the Constitution of 1894 in order (1) to insure that the right of action for wrongful death which was purely statutory in nature prior thereto could not be abolished solely by legislative action; and (2) to eliminate the arbitrary limitation of $5,000 imposed upon the amount of pecuniary damages which could be assessed as damages in such a case (Code Civ. Pro. [1894], § 1904). The amendment left undisturbed the other then existing limitation in the statute allowing recovery only of pecuniary damages which the courts of this State had interpreted as barring damages for grief, loss of society and suffering of survivors (*Medinger* v. *Brooklyn Heights R. R. Co.*, 6 App. Div. 42, 46, 47; *Miller* v. *Miller*, 22 N Y 2d 12, 18). We are not unaware of the fact that the limitation of damages in wrongful death cases, involving infant decedents has been severely criticized in other jurisdictions, as a barbarous concept. (*Wycko* v. *Gnodtke*, 361 Mich. 331 quoting Chief Baron Pollock). But we, like the court in *Fornaro* v. *Jill Bros.* (42 Misc 2d 1031, 1037), are nevertheless bound by the doctrine of *stare decisis* and must apply the law as it presently exists in this State, limiting damages to the pecuniary loss sustained by the parents. We find no ground, therefore, to overturn the trial court's action finding the verdict for the plaintiff Amerman excessive. We have, however, modified the order appealed from by increasing

the amount of the reduced award allowed by the trial court from $23,500 to $35,000. In our opinion the reduction required by the trial court was excessive to the extent indicated herein. The trial court's action reducing the awards for the injuries suffered by the Tursi boys raises a different question. There is no statutory limitation of damages in their case to pecuniary loss. The standard for overturning the jury's award of damages to them is that the award must be so excessive as to shock the conscience (*Bluth* v. *Levin*, 42 A D 2d 697; *Banks* v. *Begell*, 1 A D 2d 726, affd. 2 N Y 2d 736). We do not find that standard breached by the jury's awards and we, therefore, reinstate the jury's verdicts in their cases and modify the order appealed from accordingly. We find the contentions of the defendants without merit and the charge of the trial court to the jury to be in accordance with the law. The plaintiffs' appeal from the denial of its motion for a rehearing on the defendant's motion to set aside the verdicts in the Tursi action is dismissed on the law as academic in view of this court's decision on the merits with respect to those verdicts and on the further ground that no appeal lies from an order denying a motion for reargument of a prior motion (*Matter of Macku*, 29 A D 2d 539, *supra*). Gulotta, P. J., Martuscello, Shapiro, Christ and Benjamin, JJ., concur.