OPINION OF THE COURT
Shanley N. Egeth, J.
ACTION AND BACKGROUND
Plaintiff commenced this action to recover damages for injuries sustained in an accident at a construction site, owned by the City of New York. He claims to have been *773 injured when a bucket filled with sand bags fell on his head while it was in the process of being lifted by a crane operated by one William Bell. Plaintiff and Bell were coemployees of Slattery Associates, Inc., which was a member of a joint venture, Slattery Sand Horn, the general contractor of the project.
The action was commenced against the general contractor, joint venture, Slattery Sand Horn, William Bell, the coemployee, Pettibones Cos., Inc., the manufacturer of the crane, Bethlehem Steel Corp., the cable manufacturer, Brama-Weber & Co., Inc., the supplier of the cable used on the crane, and Madigan Praeger, Inc. (Madigan), an inspecting engineer engaged by the site owner, City of New York. The city was not named as a party defendant. Its inspecting engineer, Madigan, had been retained to oversee the construction of the project to ensure that the construction plans and specifications for the project were complied with. Various of the defendants have cross-claimed against each other.
MOTIONS
A prior motion for summary judgment was granted, and as a result, the action was dismissed against the joint venture and coemployee defendants.
In the instant motion, Madigan moves for summary judgment and dismissal of the plaintiff’s complaint.
CONTENTIONS
The movant contends there are no triable issues of fact, which, if proven, would support a determination that it was guilty of negligence or a breach of any duty owed to the plaintiff herein.
Plaintiff argues that triable issues of fact exist as to two applicable alternate theories of liability:
A — negligence — it is asserted that the defendant was negligent in that it undertook to supervise and insure the safety of the construction site, and did so negligently; and
B — labor law — Madigan was acting as the agent of the owner, City of New York, within the scope and meaning of sections 240 and 241 of the Labor Law, and as such, it was chargeable with the owner’s nondelegable duty to insure safe conditions at the construction site.
*774 DISCUSSION
A — NEGLIGENCE
It is clear from a reading of the contract between Madigan and the city that the sole function imposed upon Madigan by the contract between these parties was to inspect the site to insure that the project was built in compliance with the construction plans and documents. Paragraph 3 of the inspection contract provides as follows: “3. The engineer agrees to provide to the satisfaction of the Commissioner all necessary resident engineering inspection services required in connection with the actual construction of the project which includes the general construction and incidental work, to assure that the completed construction conforms in all respects to the plans, specifications and requirements of the contract and to good construction practice .” (Emphasis added.)
The supplement to the inspection agreement provides as follows: “1. Resident Engineering Inspection of Construction. *** The Engineer agrees that it will endeavor to safeguard the City against defects and deficiencies in the work and that he will use reasonable care and reasonable powers of observation and detection in determining that the work conforms to the construction contract documents.” (Emphasis added.) Paragraph 2 of the inspection contract explicitly specifies that the duties of the resident engineer do not include responsibility for contractor’s equipment or its use during contruction: “2. The words ‘resident engineering inspection’ where used herein are understood to mean those duties normally performed by a City-employed Resident Engineer, which duties specifically do not include the choice of construction labor, materials in temporary structures, tools, plant and construction equipment, or the method and time of their use.” (Emphasis added.)
In addition, and most significantly, the contract provides that: “29. ? * * Nothing in this Article or in this Agreement shall create or give third parties any claim or right of action against the Engineer or the City beyond such as may legally exist irrespective of this Article or this Agreement.”
It is well established that the law of New York does not impose liability upon an engineer, who is engaged to *775 assure compliance with construction plans and specifications for an injury sustained by a worker at a construction site unless active malfeasance exists or such liability is imposed by a clear contractual provision, creating an obligation explicitly running to and for the benefit of workers. (See, e.g., Bernal v Pinkerton’s, Inc., 52 AD2d 760, affd 41 NY2d 938; Hamill v Foster-Lipkins Corp., 41 AD2d 361; MacKendrick v Newport News Shipbuilding & Dry Dock Co., 40 AD2d 798, affd 35 NY2d 681; Rozner v Resolute Paper Prods. Corp., 37 AD2d 396, affd 31 NY2d 934; Santora v Greater N. Y. Mut. Ins. Co., 36 AD2d 929; Ramos v Shumavon, 21 AD2d 4, affd 15 NY2d 610; Olsen v Chase Manhattan Bank, 10 AD2d 539, affd 9 NY2d 829; cf. Lopes v Rostad, 45 NY2d 617 [sections 102 and 139 of the Highway Law, imposing a nondelegable duty on the county to keep the streets in a reasonably safe condition for travel, did not inure to the benefit of injured employees].) This is simply an application of the well-settled principle that a third party cannot enforce a contractual obligation which is not clearly intended to benefit that party (e.g., Bernal v Pinkerton’s, Inc., supra).
Plaintiff argues that a contractual duty to assure worker safety was imposed upon Madigan by the provisions of two contracts which must be read together. He first refets to the following language in the moving defendant’s contract with the city: “all work under this agreement shall be performed in accordance with those standards, practices and the provisions of the contract documents. The contract documents shall be deemed to include this agreement, with accompanying schedule or schedules, if any, the construction contracts and any supplements thereto, the Standard Department of Water Resources’ specifications, the plans of the project, and the addenda to the plans and project, and all the provisions provided by law to be inserted in the agreement, and made a part hereof.” Plaintiff then relies upon the contract between the city and the joint venture (general contractor) which contains an article 6, dealing with the inspection role of the engineer and the resident engineer, and elsewhere describes the relationship in the following language: “The resident engineer shall be the representative of the engineer of the site, and, subject to *776 review by the engineer, shall have the power in the first instance, to inspect, supervise and control the performance of the work”.
Plaintiff contends that these provisions of the city-general contractor agreement are incorporated by reference into the contract between the city and the defendant and that in combination they create a duty upon Madigan to maintain safety, which inures to the benefit of plaintiff as an employee of the general contractor.
This argument must be rejected upon the authority of the decisions hereinbefore cited. Most directly in point is the decision of the Appellate Division, First Department, in Ramos v Shumavon (21 AD2d 4, affd 15 NY2d 610, supra). In Ramos (p 7) the contract between the engineer and the State/owner (similar to that here at issue), incorporated other documents by reference, which included a provision that the contractor was, subject to the approval of the engineer, to “conduct the work in the most expeditious manner possible, having due regard for the safety of persons and property and safety for traffic”. The Appellate Division rejected the position advanced in this case in the following language (pp 7-8): “Even if we assume that this paragraph were a part of defendants’ obligations — and it is not clear that it is — it imposes no duty with respect to the contractor’s employees. The language is such as to permit of no interpretation other than it was designed to protect members of the public at large — not the workmen on the job. In any event and particularly since the defendants were not parties to the agreement wherein this language is found, any duty intended to be created in favor of the workmen should have been clearly expressed. The language of the provision in question fails to meet this test.”
Unlike the clause sought to be relied on in the Ramos case, in which the engineer was expressly chargeable with some responsibility over the contractor’s safety procedures, the clause relied upon by plaintiff in this case refers only to a duty of general inspection. Not only does it fail to remotely begin to approach the specificity and clarity of expression required by Ramos (supra) to create a duty running to this plaintiff to ensure his safety, the instant *777 contract expressly disclaims any intention to provide such a benefit to any third person.
Plaintiff further argues that notwithstanding the contract language, in actuality, defendant’s activities at the construction site assumed a much broader range of responsibility. Deposition testimony of parties in other lawsuits involving this same site is presented in an attempt to postulate the existence of a triable issue of fact that defendant acted generally as the supervisor of the project for all purposes, including safety. The testimony relied upon suggests that defendant may have exercised a broader degree of supervision at the site than was required by its contract. Even if it were so, this evidence would be insufficient to meet the Ramos standard of clarity for the assumption of a duty running toward this plaintiff’s employee.
The plaintiff’s attempted reliance on Amerman v Lizza & Sons (45 AD2d 996) is misplaced. The facts therein are distinguishable from those at bar and consistent with Ramos (supra). While a supervisory engineer was held there liable to the plaintiff (p 998), “[h]is duties also included inspection for safety compliance.” Furthermore, the plaintiff was not an employee, but a member of the public. In Ramos the court noted that a breach of a duty which would extend to a member of the general public would not necessarily extend to benefit an injured workman.
The plaintiff has failed to adduce evidence adequate to raise a triable issue as to the existence of any affirmative malfeasance or negligence in the performance or nonperformance of any duty extended to the benefit of the plaintiff herein. The defendant is therefore entitled to summary judgment on this ground (Zuckerman v City of New York, 49 NY2d 557; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065; Freedman v Chemical Constr. Corp., 43 NY2d 260).
B — LABOR LAW
The plaintiff contends that by assuming its supervisory role at the project site in accordance with the provisions of its contract with the owner, the City of New York, the defendant Madigan acquired the status of agent of the *778 owner, and thereby became chargeable with the owner’s nondelegable duty to provide for safety at the job site, which sections 240 and 241 of the Labor Law impose upon “owners, contractors and their agents.”
Counsel have supplied no case authority which provides reasonable judicial guidance for a definitive definition of the term “agent” as used in the subject sections 240 and 241 of the Labor Law. The only reference in the legislative history is contained in a 1969 New York State AF of L — CIO memo concerning the amendment to the two sections, and it is of no assistance (NY Legis Ann, 1969, pp 408-409).
Section 241 of the statute originally imposed a nondelegable duty for safety on owners and general contractors. By amendment in 1962 subcontractors were added as parties upon whom such duty was imposed, but the liability thereunder was restricted only to parties having direction and control of the construction site. The statute was again changed in 1969 to omit the requirement of control, because experience proved it to have resulted in a weakening of the protection originally intended to be provided for workers, and in replacement, added “agents” of owners and contractors, but eliminated subcontractors (see discussion in Allen v Cloutier Constr. Corp., 44 NY2d 290, 298-299).
Case law construing the preamendments statute charged such liability upon entities which, although not actually the owner, were actually performing such function (Kappel v Fisher Bros., 6th Ave. Corp., 49 AD2d 578 [subsidiary corporation of owner]; Buonassisi v Sears, Roebuck & Co., 43 AD2d 701 [lessee]; Seigel v Prima Concrete Constr. Corp., 27 AD2d 946 [lessee]). Those parties would clearly be considered agents of the owner under the operative amended statute.
Unfortunately, judicial definition of the term agent under the present applicable statute is sparse and unclear. The Court of Appeals decision in Allen (supra, p 300) explicitly noted that the 1969 amendment of the statute effected a “deletion of subcontractors from the scope of the statute” imposing nondelegable liability, but the decision is totally silent in providing definitional assistance for the term “agent”
*779 The Appellate Division, Third Department, imposed a nondelegable duty upon a subcontractor, asserting that the statutory term “‘agents’ necessarily includes subcontractors in the class of those having nondelegable liability.” (Page v La Buzzetta, 73 AD2d 483, 484.) This opinion totally ignored the explicit language contained in Allen (supra) as to the 1969 statutory amendment deletion of subcontractors from the scope of the nondelegable liability. It rather relied upon a prior Court of Appeals decision in Kelly v Diesel Constr. Div. of Carl A. Morse, Inc. (35 NY2d 1, 7) which was decided under the pre-1969 amendment statute in which such a duty was specifically imposed upon subcontractors. The Kelly case specially dealt with Dole-Dow apportionment and indemnity rather than direct liability of the subcontractor to the plaintiff. Almost a year later, this same department (Russin v Picciano, 78 AD2d 467), failed to impose the nondelegable duties of an owner upon independent prime contractors who were working on separate and different parts of the owner’s project, independently of one another. The court (p 468) determined that the “general contractor was in full control of plaintiff and the area in which he was working” and that the prime contractors involved “were not in a position to control any of the activity which produced the injury.” Despite this no liability finding based upon the facts there involved, in dicta, the court again reiterated its broad language of Page where it imposed the liability of “agent” upon subcontractors to whom the duties of an owner or general contractor had been delegated.
A recent decision of the Appellate Division, First Department, containing a broad discussion of the nondelegable duty under the Labor Law, clearly disputes the Page rationale of the Third Department upon the agent-subcontractor issues. In Rosenbaum v Lefrak Corp. (80 AD2d 337, 342) the court states the following: “Zwieker was a subcontractor. And subdivision 6 of section 241 of the Labor Law apparently does not impose any liability upon subcontractors. (See Allen v Cloutier Constr. Corp., 44 NY2d 290, 300; Raimes v New York Tel. Co., 46 NY2d 132, 136-37.) Accordingly, plaintiffs’. claim * * * under subdivision 6 of section 241 of the Labor Law should never have been submitted to the jury”.
*780 Although no clear judicial guidance for a definition of the scope of the statutory term agent has yet been provided it would seem to this court that the term must be deemed to apply to one who acts for the owner or general contractor in the sense of one who actually stands in their shoes and performs their duties and obligations, and not one who alone or with others acts for them for specified limited purposes. Whether a “subcontractor” may otherwise assume the statutory status of “agent” is not raised by the facts applicable herein.
In the instant case Madigan is not even a subcontractor performing any significant construction work for an owner or contractor. Despite Page (supra), even if Madigan were, it would be exempt from imposed liability under the statute. To impose such liability upon a resident inspecting engineer who was not an agent with the over-all authority envisioned by the statute, and whose sole contractual duty was to perform limited specified inspectional functions for the owner (even if some were quasi supervisory), would be wholly violative of the legislative intent and purpose of the contract between Madigan and the City of New York. That contract required Madigan to assure the owner that construction at the project complied with approved plans and specifications. It was not the general or managing agent of the owner at the site, nor was it involved in actual construction of any part of the job.
DECISION
Upon the basis thereof it would seem that as a matter of law the defendant Madigan is not chargeable as an agent of the owner, City of New York, with said owner’s nondelegable Labor Law obligation to assure a safe place to work, at the construction site. Since there also has been no evidentiary showing of any breach of any duty extending to this plaintiff, which would be legally cognizable to support an independent finding of negligence, no legal basis for the imposition of any liability upon Madigan to this plaintiff has been set forth.
Accordingly, the defendant’s motion for summary judgment must be granted, and the complaint must be dismissed.