OPINION OF THE COURT
Wallace R. Cotton, J.
Motion by the defendant Schimenti for summary judgment dismissing the plaintiff’s complaint, as well as all cross complaints asserted against him, is granted except as to the cross complaint interposed by the codefendant Grant Development Co.
The defendant, Grant Development Co., desirous of reno-. voting one of its buildings, engaged the defendant, Louis Engel & Co., Inc., as its general contractor, and also retained the services of the defendant, Michael Schimenti, as the architect for the construction project. Plaintiff’s intestate was a construction worker employed on the job *494 site by the third-party defendant, Afro Wrecking and Demolition Corp., a subcontractor. During the course of renovation, plaintiff’s decedent sustained severe personal injuries which led to his death when he allegedly fell through an open interior stairwell. The administratrix of his estate subsequently commenced the instant wrongful death action to recover damages against the owner of the building, the general contractor and the architect.
The plaintiff’s theory of liability against the architect is essentially predicated upon the claim that he failed to supervise the work of the general contractor and subcontractors. In addition, the plaintiff further alleges the architect failed to enforce proper safety precautions and detect safety violations to prevent the occurrence of the accident to the plaintiff’s decedent. The plaintiff does not allege that her decedent was the victim of architectural malfeasance.
In moving for summary judgment to dismiss the plaintiff’s complaint, the architect contends that his contract with the owner of the building under renovation did not impose upon him any duties or obligations of care to the workmen at the job site as alleged by the plaintiff. Therefore, it is his position that he may not be subject to tort liability in the instant action by reason of his alleged failure to perform that which the contract did not require him to perform.
Before analyzing the relevant provisions in the contract in the case at bar in order to ascertain if the architect had a contractual duty to supervise the construction work, including the enforcement of proper safety precautions, it should be observed that a split of authority exists among the various jurisdictions which have considered the question of whether an architect, who is in fact contractually responsible for the supervision of a construction project, is liable for injuries sustained by workmen as a result of unsafe working conditions (see Ann., 59 ALR3d 869). The minority rule imposes liability where the contract vests in the architect extensive supervisory duties, including the right to stop the work (Swarthout v Beard, 33 Mich App 395, revd on other grounds 388 Mich 637; Miller v DeWitt, 37 Ill 2d 273), whereas the majority rule refuses to find *495 liability absent a clear assumption of duty by the architect (Day v National U. S. Radiator Corp., 241 La 288; Reber v Chandler High School Dist. #202,13 Ariz App 133; Walker v Wittenberg, Delony & Davidson, Inc., 241 Ark 525, reh granted 242 Ark 97; Luterbach v Mochon, Schutte, Hackworthy, Juerisson, Inc., 84 Wis 2d 1; Wheeler & Lewis v Slifer, 195 Col 291).
In New York, the older cases refuse to fasten liability upon the architect where his failure to properly supervise the work amounted to nothing more than nonfeasance (Potter v Gilbert, 130 App Div 632, affd 196 NY 576; Clinton v Boehm, 139 App Div 73; Olsen v Chase Manhattan Bank, 10 AD2d 539, affd 9 NY2d 829; Allen, Liabilities of Architects and Engineers to Third Parties, 22 Ark L Rev 454, 459-461; Sweet, Site Architects and Construction Workers: Brothers and Keepers or Strangers?, 28 Emory LJ 291, 317, citing Hamill v Foster-Lipkins Corp., 41 AD2d 361).
In an effort to avoid liability under the minority rule, the American Institute of Architects revised its standard form contract with the owners to delete the troublesome words of supervision and inspection. The contract in the case at bar is the product of the various revisions made by the American Institute of Architects. The revised contract portrays the role of the architect as one who only ensures design conformity. The relevant provisions of the contract are as follows:
“§ 2.2.2 The architect will be the Owner’s representative during construction and until final payment is due. The Architect will advise and consult with the Owner. The Owner’s instructions to the Contractor shall be forwarded through the Architect. The Architect Will have the authority to act on behalf of the Owner only to the extent provided in the Contract Documents, unless otherwise modified by written instrument in accordance with Subparagraph 2.2.18.
“§2.2.3 The Architect will visit the site at intervals appropriate to the stage of construction to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is progressing in accordance with the Contract Documents. However, *496 the Architect will not be required to make exhaustive or continuous on site inspections to check the quality or quantity of- the work. On the basis of his on-site observations as an Architect, he will keep the Owner informed of the progress of the Work, and will endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor.
“§ 2.2.4 The Architect will not be responsible for and will not have Control or Charge of Construction, means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he will not be responsible for the Contractor’s failure to carry out the Work in accordance with the Contract Documents. The Architect will not be responsible for or have control or charge over the acts or omissions of the contractors, subcontractors, or any of their agents or employees, or an}r other persons performing any of the Work.
“§ 4.3.1. The Contractor shall supervise and direct the Work using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract.
“§ 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs with the Work.
“§ 10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:
“.1 All employees on the Work * * *
“§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities.”
It is evident from reading the aforesaid contractual provisions that the architect has been completely stripped of all supervisory powers and duties. The contract mani *497 fests an unmistakable intention to place exclusive control over the construction work, and more importantly, the responsibility for protecting workmen against injury, in the hands of the general contractor. Moreover, any contractual right which the architect heretofore had to halt work on the project, which supported liability under the minority rule, was eliminated. Thus, the issue for the court to determine is whether the contract now under review insulates the architect from tort liability to the plaintiff in the instant action.
In the case of Brown v Gamble Constr. Co. (537 SW2d 685), the Missouri appellate court had occasion to consider the identical contract in connection with an injured workman’s tort claim brought against an architect based upon the same common-law theory as the plaintiff asserts in the instant action. The court refused to find liability against the architect.
In response to the plaintiff’s argument that the architect has a duty as a “design professional” to supervise the construction and ensure that safety precautions are taken to protect workers, the court in Brown v Gamble Constr. Co. (supra, p 687) declared that “architects are under no duty to supervise construction unless they expressly agree to do so * * * A determination in this case as to who was responsible for general supervision of the project and, specifically, for establishing safety measures to protect persons * * * involved is not difficult. By contract, [the general contractor] expressly assumed responsibility for safety precautions during the construction of the [building]. Article 10 of the contract, 'Protection of Persons and Property’, states that 'The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.’ Article 2.2.4 provided: ‘The Architect will not be responsible for construction means, methods, techniques, sequences of procedures, or for safety precautions and programs in connection with the Work’”. Accordingly, the appellate court sustained the lower court’s direction of a verdict in favor of the architect (also see Walters v Kellam & Foley, Mussett, Nicholas & Stevenson, Inc., 172 Ind App 207, 225).
*498 Section 2.2.3 of the architect’s contract with the owner requires the architect to “visit the site at intervals appropriate to the stage of construction to familiarize himself generally with the progress and quality of the Work and to determine if the Work is progressing in accordance with the Contract Documents.” “[T]he primary object of this provision was to impose the duty or obligation on the architects to insure to the owner that before final acceptance of the work the building would be completed in accordance with the plans and specifications; and to insure this result the architects were required to [Visit the site at intervals appropriate to the stage of construction’]. Under the contract [the architect] had no duty to supervise the contractor’s method of doing the work. In fact, as [an architect he] had no power or control over the contractor’s method of performing his contract, unless such power was provided for in the specifications. [His] duty to the owner was to see that before final acceptance of the work the plans and specifications had been complied with, that proper materials had been used, and generally that the owner secured the building it had contracted for”. {Day v National U. S. Radiator Corp., 241 La 288, 304-305, supra.)
Therefore, in the complete absence of the contractual right to supervise and control the construction work, as well as site safety, the architect cannot be held liable for the death of the plaintiff’s decedent (Vorndran v Wright, 367 So 2d 1070 [Fla], cert den 378 So 2d 350 [Fla]; Porter v Stevens, Thompson & Runyan, Inc., 24 Wash App 624; Luterbach v Mochon, Schutte, Hackworthy, Juerisson, Inc., 84 Wis 2d 1, supra; Walker v Wittenberg, Delony & Davidson, Inc., 242 Ark 97, supra; Wheeler & Lewis v Slifer, 195 Col 291, supra; Ann., 59 ALR3d 869, 886, § 6b; see other cases cited by Hoch, Architects Liability For Construction Site Accidents, 30 Univ of Kansas L Rev 429, 433, n 41). “To hold otherwise would make the architect the general safety supervisor at the site, a job which would require his continuous presence in disregard of the express language of his contract” (Vonasek v Hirsch & Stevens, Inc., 65 Wis 2d 1, 11-12).
Furthermore, in opposing the, instant motion by the architect, neither the plaintiff nor the codefendants ad *499 vanee any reason why the architect, who did not have the right or duty to supervise and control the work, should be held liable to a worker injured during construction when, under the facts in this case, New York law would not impose liability upon another related design professional, the engineer, who, like the architect, is also engaged to assure compliance with construction plans and specifications (Ramos v Shumavon, 21 AD2d 4, affd 15 NY2d 610; Hamillv Foster-Lipkins Corp., 41 AD2d 361, supra; Conti v Pettibone Cos., 111 Misc 2d 772, affd 90 AD2d 708).
Plaintiff recently served an amended bill of particulars which, inter alla, alleges that the defendant architect failed to adhere to the safety requirements mandated by section 241-a of the Labor Law. Thus, as an alternative theory of liability, plaintiff further argues that the architect is subject to statutory liability for the death of the plaintiff’s decedent.
Section 241-a of the Labor Law provides that “[a]ny men working in or at * * * stairwells or buildings in course of construction or demolition shall be protected by sound planking at least two inches thick laid across the opening at levels not more than two stories above and not more than one story below such men, or by other means specified in the rules of the board”.
Unlike sections 240 and 241 of the Labor Law, section 241-a is silent in specifying the persons who must obey its command to safeguard workers. However, since the purpose of section 241-a is similar in scope to that of section 241, the sections should be read in pari materia (Horan v Dormitory Auth., 43 AD2d 65). Accordingly, the duty mandated by section 241-a devolves upon “all contractors and owners and their agents” (see Labor Law, §§ 240, 241).
But in order to classify the architect as an “agent” of the owner or general contractor for the purpose of casting tort liability upon him under section 241-a, it must be shown that he had the authority to supervise and control the work (cf. Russin v Picciano & Son, 54 NY2d 311). However, as previously discussed in examining the relevant provisions in the contract between the owner and the architect, the latter had no duty or power to supervise and control the work. These obligations were specifically reserved to the *500 general contractor. Therefore, the architect cannot be subject to liability to the plaintiff for an alleged violation of section 241-a of the Labor Law. Accordingly, the architect is entitled to summary judgment dismissing the plaintiff’s complaint against him (Conti v Pettibone Cos., 111 Misc 2d 772, 780, affd 90 AD2d 708, supra).
There remains for consideration the disposition of that branch of the architect’s motion for summary judgment dismissing all cross claims asserted against him as well.
It is the movant’s position, and the court agrees, that since he did not owe a duty to protect the plaintiff’s decedent from danger on the work site, he may not be found liable in tort to the plaintiff. However, it does not follow therefrom, as the movant suggests, that the absence of a duty owed to the plaintiff by the architect effectively precludes the codefendants and third-party defendants from seeking contribution or indemnification against him. Although the movant cites Garrett v Holiday Inns (86 AD2d 469) in support of his position, the court notes that the holding therein upon which the movant relies was substantially eroded upon appeal by the Court of Appeals in its recent opinion when it reviewed the case (Garrett v Holiday Inns, 58 NY2d 253).
The Court of Appeals in Garrett v Holiday Inns {supra, p 261) pronounced that “[i]f an independent obligation can be found on the part of a concurrent wrongdoer to prevent foreseeable harm, he should be held responsible for the portion of the damage attributable to his negligence, despite the fact that the duty violated was not one owing directly to the injured person”. Stated another way, if there is “[no] actionable duty owed by a third party directly to the injured plaintiff, the third party may [nevertheless] be held liable for a proportionate share of the damages on the basis of a breach of duty [owed] to [another party defendant] who must respond directly in damages to the plaintiff” (Garrett v Holiday Inns, supra, p 264 [Jasen, J., dissenting in part]). Therefore, the inquiry now focuses upon whether or not the movant owed a duty to the cross claimants to protect them from the foreseeable risks of harm, the breach of which would potentially expose them to liability to the. plaintiff.
*501 Section 2.2.3 of the architect’s contract with the owner provided, in part, “[o]n the basis of his on-site observations as an Architect, he will keep the Owner informed of the progress of the Work, and will endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor”. The architect visited the construction area on the date of the accident. During his deposition, the architect admitted that it was his duty to report to the owner any work not being done in a workmanlike manner, including openings in floors which were unprotected. Therefore, if the architect had knowledge of an unprotected open stairwell, the contract required (and he himself so acknowledged) that he report it to the owner. Thus, a triable issue of fact exists in regard to the owner’s cross complaint against him for contribution (cf. Central School Dist. v Flintkote Co., 56 AD2d 642; cf. Potter v Gilbert, 130 App Div 632, affd 196 NY 576, supra; cf. Olsen v Chase Manhattan Bank, 10 AD2d 539, 544, affd 9 NY2d 829, supra).
Although the movant denied actual knowledge of any dangerous working condition when he visited the site on the day of the accident, when the salient facts are peculiarly within the control or possession of the moving party and not available to the other party, as they are here, summary judgment is unavailable (Santorio v Diaz, 86 AD2d 926; Bruno v Home Mut. Ins. Co. of Binghamton, 91 AD2d 1169).
Accordingly, the movant’s motion for summary judgment dismissing the owner’s (Grant Development Co., Inc.) cross complaint against him is denied; however, in view of the court’s dismissal of the plaintiff’s complaint against the movant, he will now assume the status of a third-party defendant upon the trial of the instant action (cf. Klinger v Dudley, 41 NY2d 362, 365).
All other cross claims interposed against the movant are dismissed by virtue of the fact no remaining cross claimant has demonstrated the existence of a duty upon the part of the movant to insulate it from liability to the plaintiff (Garrett v Holiday Inns, 58 NY2d 253, supra).