Gerald SHERWOOD, Plaintiff,

v.

OMEGA CONSTRUCTION COMPANY and the Village of Liberty, Defendants.

The VILLAGE OF LIBERTY, Third-Party Plaintiff,

v.

DIACO CONSTRUCTION COMPANY and Erikson & Scmitt Engineers, P.C., Third-Party Defendants.

No. 86 Civ. 2645.

United States District Court, S.D. New York.

April 1, 1987.

Bertram Eisenberg, Appelbaum, Eisenberg, Bauman & Appelbaum, Liberty, N.Y., for plaintiff Sherwood.

Eric Kurtz, Cook, Tucker & Cloonan, Kingston, N.Y., for defendant-third party plaintiff Village of Liberty.

Henry Machtman, Levy, Bivona & Cohen, New York City, for Omega Const.

Mark Seiden, Reidy & Goglick, P.C., New York City, for third-party defendant Grikson & Schmitt.

Hugh Lavery, Babchak, Daly & Lavery, Ossining, N.Y., for third-party defendant Diaco Const. Co.

## MEMORANDUM AND ORDER

BRIEANT, Chief Judge:

Plaintiff Gerald Sherwood, a citizen of Pennsylvania, was a mason's apprentice employed by third-party defendant Diaco Construction Company, a New York corporation. Diaco was a subcontractor and defendant Omega Construction Company, a New York corporation, the prime contractor in the construction of a waste water treatment facility in this district for defendant Village of Liberty. On the morning of October 9, 1985, in the course of getting coffee for the masonry crew, as he had been ordered to do, Sherwood crawled through an unfinished window space onto a fifteen-foot high concrete platform or walkway. Sherwood fell off the walkway and sustained injuries.

Sherwood sued Omega, and, in an amended Complaint filed on June 13, 1986, added the Village as codefendant. By a third-party complaint filed in this Court on August 12, 1986, the Village impleaded Diaco and the project engineers, Erikson & Schmitt, P.C. ("E & S"). The case comes before this Court on a motion by E & S to dismiss the third-party complaint and Diaco's third-party cross-claim. Plaintiff, defendant, and Diaco all oppose the motion. For the reasons given below, the motion must be granted.

The plaintiff's amended Complaint charged defendants with negligence and with violating N.Y. Labor L. §§ 200 (imposing general duty to provide workplace safety), 240 (imposing obligation to provide safe scaffolding in construction projects), and 241 (imposing specific duties regarding flooring, elevators, and similar appurtenances in construction, excavation, and demolition projects) (McKinney 1986). Sections 240 and 241 contain relevantly identical exemptions from statutory liability for "professional engineers as provided for in article one hundred forty-five of the education law ... who do not direct or control the work for activities other than planning and design." *Id.* § 240(1); *id.* § 241(9). *See* N.Y.Educ.L. §§ 7201–7202 (McKinney 1985) (defining "engineer" and "professional engineer").

E & S relies on these provisions of the Labor Law in its motion to dismiss, asserting that its resident engineer did not "direct or control" work on the site so as to deprive it of the benefit of the exemption. Apart from conclusory assertions that the resident engineer did exercise such direction or control, the various opponents adduce the following four instances:

1. On the back of his daily report for October 9, 1985, the resident engineer made the following notation: "Note: due to mud on waterstop and keyways I advised carpenter foreman to stop building forms on influent structure, not to close it up until mud was removed."

2. In deposition, Joseph Diaco, president of Diaco Construction, testified that he told the resident engineer about work-

ers' use of the window space as an entrance, and that the resident engineer said that he would take it up with Omega. Diaco also stated that he told another E & S engineer that "somebody was going to get hurt off the wall."

3. E & S personnel took part in bimonthly progress meetings at which safety procedures were discussed.

4. In deposition, the resident engineer stated that "We're the owner's representative to insure as best we can that the project is built according to the plans and specifications."

These allegations are insufficient as a matter of New York law to establish that the resident engineer exercised direction and control over the project. The New York Court of Appeals has said that "direct" is to be construed "strictly and literally"—"there must be supervision of the manner and method of the work to be performed." *Duda v. John W. Rouse Construction Corp.*, 32 N.Y.2d 405, 409, 345 N.Y.S.2d 524, 526, 298 N.E.2d 667, 668–69 (1973). The lower New York courts have added that such supervision must be affirmative. *See, e.g., Cole v. Long Island Lighting Co.*, 24 Misc.2d 221, 196 N.Y.S.2d 187, 194 (Sup.Ct.Kings Cty.1959). Opponents have adduced no evidence that E & S affirmatively required anyone to act unsafely. Joseph Diaco's statement, for example, could establish at most that E & S expressed concern about warning people *not* to act in ways that seemed unsafe. Thus, opponents have not established that the exemption of §§ 240 and 241 does not apply to E & S in its role as project engineer.

Opponents argue that in actuality, E & S did not confine itself to the supervisory work of a project engineer, but instead acted as a contractor, and that contractors are not exempt from liability under §§ 240 and 241. The Court finds these arguments unconvincing. New York cases that have found other actors to be functionally "contractors" for the purposes of the Labor Law have relied on contracts that gave those actors more authority than the contract in the instant case gave the E & S resident engineer. *See, e.g., Carollo v. Tishman Construction & Research Co.*, 109 Misc.2d 506, 440 N.Y.S.2d 437, 439–40 (1981) (functional contractor is one who "coordinates and/or supervises the project for an owner, assuming the on-the-job responsibilities of the owner as its alter-ego"). Indeed, the instant contract specifically prohibits the resident engineer from assuming responsibilities of the contractor. As the resident engineer characterized E & S's role in his deposition, "We don't direct. We don't supervise. We don't dictate means of construction. We don't dictate methods of construction. We don't schedule. We're there simply as observers to insure the intent of the contract documents are carried out."

The New York courts have found that project engineers whose contracts resemble that of E & S are not contractors under the Labor Law. *See Kerr v. Rochester Gas & Electric Corp.*, 113 A.D.2d 412, 496 N.Y.S.2d 880, 883–84 (4th Dep't 1985); *Ramos v. Shumavon*, 21 A.D.2d 4, 247 N.Y.S.2d 699 (1st Dep't 1964); *Conti v. Pettibone Cos.*, 111 Misc.2d 772, 445 N.Y.S.2d 943 (1981), *aff'd mem.*, 90 A.D.2d 708, 455 N.Y.S.2d 689 (1982).

■ Alternatively, opponents argue that E & S is liable on a theory of negligence. Even accepting opponents' contention that E & S's resident engineer exercised broader supervision than was called for in the contract, however, this would not have established a duty of care running from engineer to employee. Any such duty must be "clearly expressed." *Conti, supra*, 445 N.Y.S.2d at 947. Where, as here, there is no privity between the engineer and the injured employee, the courts have held that to be actionable, the negligence must be affirmative. *Hamill v. Foster-Lipkins Corp.*, 41 A.D.2d 361, 342 N.Y.S.2d 539, 541–42 (3d Dep't 1973).

In sum, there is no contractual or legal provision in this case that could subject E & S to liability for plaintiff's injuries. Opponents have not stated facts sufficient to establish third-party liability for E & S under the Labor Law, or on a theory of

common law negligence. The third-party complaint must be and hereby is dismissed.

Diaco's opposition to E & S's motion to dismiss Diaco's third-party cross-claim raises no issues that have not already been considered. The cross-claim is, accordingly, also dismissed.

The Court declines at this time to make the finding contemplated by Rule 54(b) F.R. Civ.P.

So Ordered.