OPINION OF THE COURT
Leo F. Hayes, J.
This matter is before the court on a motion by the defendant City of Oswego for summary judgment and upon a cross motion by the plaintiff for a partial summary judgment on the issue of liability.
The plaintiff, Gary Seeber, was allegedly injured in a fall *367 from the roof of a single-family dwelling on June 11, 1987. At the time of the accident in issue he was employed by James Root, doing business as James Root General Contractor. The single-family dwelling home was owned by Anne Reed. The work being performed on the house was financed in part by a grant program administered by the City of Oswego and financed by the United States Department of Housing and Urban Development (HUD).
Plaintiff's complaint against the city premises liability upon section 240 (1) of the Labor Law of the State of New York. The plaintiff, by his complaint, alleges that the defendant city was the general contractor of this work project. In the pending cross motion for summary judgment the plaintiff, without amending his complaint or bill of particulars, makes the new argument that the defendant city was actually the agent of the homeowner, Anne Reed. For reasons which will be set forth below, this court is of the opinion that neither argument has merit under the facts as presented.
The parties have presented detailed affidavits and exhibits outlining the city’s role as the administrator of the HUD grant program. The city, through Barbara Hanley, the Housing Assistance Administrator, administered a housing rehabilitation grant and loan program funded by HUD. The city distributed the funds to needy homeowners through Barbara Hanley’s office. Upon receiving HUD grants for general home improvement, the city would notify homeowners of a targeted area that moneys were available for the repair and renovation of their homes. The homeowners would submit applications subject to city approval. Apparently, depending on financial circumstances of the homeowners, the homeowners would then receive outright grants for portions of the necessary work to their homes, and would themselves finance portions of the work. The city would send an inspector to the property to determine the nature of the work to be done, and the city would then prepare a general work order. Bids would be solicited from various contractors, and the contractors were subject to bid specifications as outlined by the City Housing Assistance Administrator.
Upon receipt of the bids, the homeowner would select, within a range of bids, the contractor to perform the work upon her home. The contractor and homeowner would thereafter enter into a work contract, apparently prepared by the city, to which the city was not a party. After completion of the work, the city housing inspector would approve the work *368 performed, and upon final approval of the homeowner, the city would arrange to pay the HUD funds to the contractor.
The city could, if it chose, from time to time send its inspector to inspect work in progress. However, the city, while it would approve the work to be done, had no direct supervision or control over the manner in which the work was performed, or the method by which the work was done, tools used, the number of employees, the safety methods employed, etc.
A review of the records would indicate that while the city had the authority to inspect the property during work in progress, the city inspector did not inspect this particular roofing project while the work was being performed.
Section 240 (1) of the Labor Law provides in relevant part that "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering * * * of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders * * * and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.”
There is no evidence that the City of Oswego, as the conduit for HUD funds, served as the general contractor for this project. Clearly, James Root was the general contractor. The only issue remaining before this court is whether the City of Oswego in some manner would qualify as an agent of Mrs. Reed, the homeowner, for the purpose of conferring liability upon the city. The law is well established that liability under section 240 extends to third parties, "only if they have authority to supervise and control the activity producing the injury and so come within the purview of section 240 as the agent of the owner or contractor. * * * It is the authority to supervise and control the situation causing the injury that is essential”. (Kopacz v Airco Carbon, 104 AD2d 722-723 [4th Dept 1984] [emphasis added].)
While the HUD grant program administered by the City of Oswego allowed the city to delineate the nature of the work to be performed and to put boundaries or parameters on the scope of the work, there is nothing in the materials before this court to suggest that the city took it upon itself or had the power to take it upon itself to control the work site activity. *369 Under such circumstances, liability should not accrue to the city. (Hamby v High Steel Structures, 134 AD2d 884 [4th Dept 1987].)
As another court has noted “Although no clear judicial guidance for a definition of the scope of the statutory term agent has yet been provided it would seem to this court that the term must be deemed to apply to one who acts for the owner or general contractor in the sense of one who actually stands in their shoes and performs their duties and obligations, and not one who alone or with others acts for them for specified limited purposes.” (Conti v Pettibone Co., 111 Misc 2d 772, 780 [1981].)
The Conti case (supra) involved an attempt to apply liability pursuant to Labor Law §§240 and 241 upon the inspecting engineer, Madigan (which the court also decided, for other reasons, was statutorily excluded from liability by virtue of its status as an engineer). In reviewing Madigan’s status as an agent, the court found further that the contract “required Madigan to assure the owner that construction at the project complied with the approved plans and specifications. It was not the general or managing agent of the owner at the site, nor was it involved in actual construction of any part of the job”, and for this reason the court found no legal basis for the imposition of liability upon Madigan as an agent within the meaning of the Labor Law provisions (supra, 111 Misc 2d, at 780).
While this court is sympathetic to the injuries of the plaintiff, nevertheless, there does not appear to be any rational basis in law for extending the concept of agent or general contractor to the administrator of a government funding program. If such liability were extended, it would be a very short step to extending the same analogy to FHA funding sources, and even to banks on the basis of home equity mortgages. The extent to which the City of Oswego had any control over the project was limited to its supervisory acts in furtherance of the proper utilization of government funds. It did not take any active role in supervising the manner in which work was performed or any safety aspects having to do therewith. The defendant City of Oswego’s motion for summary judgment is granted, and the plaintiff’s cross motion for partial summary judgment is denied.