OPINION OF THE COURT
David O. Boehm, J.
This case presents an issue of apparent first impression in this State; whether an architect, who allegedly failed to make adequate periodic inspections during construction and thereby failed to learn of defects in the work, is immune from liability by virtue of a contract provision stating that he will not be responsible for the contractor’s acts or omissions.
In these consolidated actions plaintiffs, the Diocese of Rochester, New York, and St. Theodore’s Church of Gates, New York, seek to recover damages sustained at the church after a fire which, it is claimed, was caused by the faulty installation of insulation around light fixtures. The actions are brought against the general contractor, R-Monde Contractors, Inc.; the architect, Starks Wurzer Patterson Romeo Architects, P. C. (Architect), and several subcontractors. On this motion the Architect seeks summary judgment dismissing the complaint and the cross claims against it.
In 1981 the Architect was retained by St. Theodore’s Church to provide architectural services in connection with the renovation of its church. Among other things, the renovation involved installation of insulation above the church ceiling. The contract between St. Theodore’s Church and the Architect was the standard form agreement prepared by the American Institute of Architects, which required the Architect to prepare design and construction documents for the renovation project. The contract also imposed certain obligations on the Architect during the construction phase of the project. Subparagraph 1.5.4 of the contract provides: "The Architect shall visit the site at intervals appropriate to the stage of construction * * * to become generally familiar with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. However, the Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of such on-site observations as an architect, the Architect shall keep the Owner informed of the progress and quality of the *928 Work, and shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor”.
Based on its observations at the worksite the Architect was obligated to issue certificates of payment in such amounts as it determined were owing to the contractor (subpar 1.5.7). In this regard, subparagraph 1.5.8 provides: “The issuance of a Certificate of Payment shall constitute a representation by the Architect to the Owner, based on the Architect’s observations at the site as provided in subparagraph 1.5.4 and on the data comprising the Contractor’s Application for Payment, that the Work has progressed to the point indicated; that, to the best of the Architect’s knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents * * * and that the Contractor is entitled to payment in the amount certified”.
Although the Architect had an obligation to make such on-site inspections and possessed the authority to reject work that did not conform to the contract documents (subpar 1.5.12), subparagraph 1.5.5 provides that the architect, “shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, for the acts or omissions of the Contractor, Subcontractors, or any other persons performing any of the Work, or for the failure of any of them to carry out the Work in accordance with the Contract Documents”.
The complaint against the Architect alleges causes of action for breach of contract, negligence, and breach of express and implied warranties. Included in plaintiffs’ bill of particulars are allegations that the Architect failed to provide proper data, specifications and drawings to those who installed the insulation and electrical components; failed to adequately supervise and inspect such installations; failed to ensure adherence with all industry and trade standards involving such installations; failed to recognize and take appropriate precautions against the risk of fire; failed to undertake sufficient on-site observations of the work and keep plaintiffs informed of the progress; and failed to appreciate and advise plaintiffs of the potential for insulation overheating.
In opposing the Architect’s motion, plaintiffs have submitted an affidavit from Frank J. Mollura, an electrical and mechanical engineer, who investigated the cause of the fire. According to Mollura, combustible cellulosic insulation was installed too *929 close to the recessed light fixtures in violation of the NEC code, and did not allow the heat generated by the fixtures to escape, ultimately causing the fire.
The Architect does not dispute Mollura’s conclusions, but contends that it was not hired to supervise or inspect the quality of the work done nor did it undertake such a responsibility, that its contract made it not responsible for the construction methods used by the contractor, and that R-Monde, the general contractor, was solely responsible for supervising and directing the work. It is the Architect’s further position that it had no knowledge of the way the insulation was installed; that it did not supervise or inspect the installation of insulation; that because of the narrow confines of the attic area it would have been physically impossible to inspect the work at the extremities of the attic and extremely difficult to inspect the remainder; and that it did not have personnel sufficiently skilled or experienced in the field of insulation installation.
Generally, a person who contracts with an architect and who alleges that the architect has breached the obligation to properly design and supervise the construction, may sue for breach of contract and negligence (Sears, Roebuck & Co. v Enco Assocs., 43 NY2d 389). However, an architect is not subject to an action for breach of warranty (supra, at 398; see also, Milau Assocs. v North Ave. Dev. Corp., 42 NY2d 482) and, therefore, plaintiffs warranty claims are dismissed.
The Architect’s contention that its contract did not impose a duty to inspect is contrary to the express language of its agreement. Although the Architect was not obliged to supervise the construction work or to make exhaustive or continuous on-site inspections, it was, nevertheless, required to visit the site periodically in order to be familiar with the progress and quality of the work, to determine generally if the work was proceeding in accordance with the contract documents, to keep plaintiffs informed about the progress and quality of the work, and to guard the plaintiffs against defects in the work. The Architect’s obligation to issue certificates of payment required him to be familiar with both the quantity and quality of the work done. Generally, the primary object of these provisions is " 'to impose the duty or obligation on the architects to insure to the owner that before final acceptance of the work the building would be completed in accordance with the plans and specifications’ ” (Welch v Grant Dev. Co., *930 120 Misc 2d 493, 498, quoting Day v National U.S. Radiator Corp., 241 La 288, 304,128 So 2d 660, 666).
The exculpatory provision contained in subparagraph 1.5.5, excusing the Architect from responsibility for construction methods or for the acts or omissions of the contractor, does not immunize the Architect from liability flowing from a breach of its duties to plaintiffs. Although no New York case has been found, in Hunt v Ellisor & Tanner (739 SW2d 933 [Ct Apps, Tex]), a case involving the identical contract provisions at issue here, it was there held that, where liability is predicated on a breach of the duties the architect owes to the owner, the exculpatory language does not absolve an architect from liability for a contractor’s failure to carry out the work in accordance with the contract documents. The exculpatory provision is "nothing other than an agreement that the architect is not the insurer or guarantor of the general contractor’s obligation to carry out the work in accordance with the contract documents” (739 SW2d, supra, at 937). It does not diminish the Architect’s "nonconstruction responsibility * * * to visit, to familiarize, to determine, to inform and to endeavor to guard” (supra, at 937; see also, Shepard v City of Polatka, 414 So 2d 1077, 1078 [Dist Ct App, Fla]). Since the Architect’s agreement with plaintiffs imposed such duties upon it, it is of no consequence that R-Monde’s contract with the plaintiffs obligated R-Monde to supervise and direct the work.
Although there is authority to the contrary, holding that the exculpatory provision absolves an architect from any liability for a contractor’s failure to follow contract documents (Moundsview Ind. School Dist. No. 621 v Buetow & Assocs., 253 NW2d 836 [Sup Ct, Minn]), the rationale in Hunt v Ellisor & Tanner (supra) is more persuasive for several reasons; exculpatory provisions are disfavored and are to be narrowly construed (see, Gross v Sweet, 49 NY2d 102), ambiguities in a contract are to be resolved against the maker, and a contrary holding would leave owners without recourse against architects who fail to fulfill their contractual duties to make timely and proper inspections.
The New York cases cited by the Architect do not support a contrary conclusion. While the court in Board of Educ. v Sargent, Webster, Crenshaw & Folley (146 AD2d 190) held that the identical exculpatory provision did not preclude the imposition of liability upon an architect who had knowledge of defects and failed to notify the owner, it did not hold that an *931 architect is immune from liability if it fails to learn of a defect due to a breach of its own contractual duty to conduct adequate periodic inspections. It is significant that the Board of Educ. court, in discussing the impact of the exculpatory provision, acknowledged a distinction between liability arising from a breach of the architect’s own contractual duties versus liability imposed upon the architect as a guarantor of the contractor’s performance (146 AD2d, supra, at 196).
Jewish Bd. of Guardians v Grumman Allied Indus. (96 AD2d 465, affd 62 NY2d 684), which involved rain damage to modular units prior to their alignment on a foundation and the installation of a roof, is also distinguishable because the damage occurred prior to the incorporation of the modular units in the structure and, as here, the architect was not retained to supervise the performance of the work.
Lastly, both Clinton v Boehm (139 App Div 73) and Welch v Grant Dev. Co. (120 Misc 2d 493) are distinguishable because each involved an injured worker’s tort claim. The claims against the architects were dismissed because in each case the architect had no duty to supervise and control the construction work or job safety.
As a matter of interest, the Welch v Grant Dev. Co. court’s resolution of the architect’s application to dismiss the owner’s cross claim actually supports the plaintiffs’ position in this case. There, the court denied the architect’s motion to dismiss the owner’s cross claim on the ground that the contract between them, like the instant contract, obligated the architect to keep the owner informed of the work progress, and to endeavor to guard the owner against defects and deficiencies in the work. Although, as here, the architect in Welch (supra) denied knowledge of any dangerous working conditions, the court stated, "when the salient facts are peculiarly within the control and possession of the moving party and are not available to the other party * * * summary judgment is unavailable” (120 Misc 2d, supra, at 501). Similarly, the mere fact that the Architect denies having actual knowledge of the manner in which the insulation was installed around ceiling light fixtures does not, of itself, entitle the Architect to summary judgment.
Accepting plaintiffs’ claim that the Architect failed to undertake sufficient on-site observations of the work and failed to keep plaintiffs informed of the progress and quality of the work, any lack of knowledge would be attributable to the *932 Architect’s own failure to fulfill its obligations under the contract.
Plaintiffs’ allegations are, in fact, supported by the Architect’s admission that it did not inspect the installation of the insulation but, nevertheless, issued certificates of payment for such work. As noted above, subparagraph 1.5.8 of the Architect’s contract provides that the issuance of such certificates constitutes a representation by the Architect that the work has progressed to the point indicated and, to the best of its knowledge, the quality of the work is in accordance with the contract documents. Therefore, regardless of whether or not the Architect had actual knowledge, questions of fact exist as to whether the Architect failed to fulfill its obligation to inspect and, if so, whether such omission was a proximate cause of the failure to discover the allegedly defective manner in which the insulation was installed (see, Central School Dist. No. 2 v Flintkote Co., 56 AD2d 642).
Plaintiffs bill of particulars also alleges that the Architect "failed to furnish proper instructions, guidance, data, specifications and drawings to those who installed the electrical facilities and insulation”. On this motion, the Architect makes no response to such allegations, and thus additional factual questions remain as to whether there was a failure to exercise the degree of care required of an architect in the preparation of contract documents (see generally, PJI 2:153).
Accordingly, the Architect’s motion for summary judgment is denied except as to plaintiffs’ causes of action for breach of warranty.