Glenn C. WAGGONER; and Wyvern A. Cline, Administrator of the estate of Isaac Miller, deceased; and Shirley D. Lunow, Administratrix of the estate of John Charles Lunow, deceased, Appellants,

v.

W & W STEEL COMPANY, a corporation; and Benham Blair & Affiliates, Inc., a corporation, Appellees,

and

Great American Insurance Company, Intervenor.

No. 55285.

Supreme Court of Oklahoma.

Nov. 30, 1982.

Rehearing Denied Feb. 8, 1983.

Larry D. Muse, Bower & Muse, P.C., Norman, Ben T. Lampkin, Cindy Campbell, Lampkin, Wolfe, McCaffrey & Tawwater, Oklahoma City, for appellants.

James M. Little, Ungerman, Conner, Little, Ungerman, & Goodman, Oklahoma City, for Shirley D. Lunow, Adm'x of the Estate of John Charles Lunow, Deceased.

Hugh A. Baysinger, Stephanie Mather Croy, Pierce, Couch, Hendrickson, Johnston, Baysinger, & Amis, Oklahoma City, for appellees.

Richard D. Keirsey, Looney, Nichols, Johnson & Hayes, Oklahoma City, for intervenor.

John R. Clark, William J. Kennedy, Dechert Price & Rhoads, Philadelphia, Pa., William J. Robinson, Shirk, Work, Robinson & Williams, Oklahoma City, for amici curiae.

BARNES, Vice Chief Justice:

This case presents for resolution on appeal, the following issue:

Is the architect who designed this building responsible for ensuring that the contractor employ safe methods and procedures in performing his work?

During the construction of Presbyterian Hospital in Oklahoma City, Oklahoma, a portion of the steel framework fell, resulting in the death of two workmen and the

injury of another. The accident occurred on a Friday, as workers were beginning to secure a portion of the steel in the sixth, seventh and eighth floors which had been erected that day. The three men were on the structure waiting for other workers to bring up guy lines which were to be used in securing the steel before an approaching thunderstorm rolled in over the construction site. Before the task could be completed, a gust of wind hit the unsecured and unbraced steel, causing it to collapse.

In designing this building, the architects had provided for expansion joints which would allow for expansion and contraction with changing weather conditions. The expansion joint was designed so that a shelf, welded to a column, provided a seat for a beam which was held in place by "keeper angles" welded in on either side of the beam. The opposite end of the beam was secured to another column with large bolts. Unfortunately, at the time of the accident, the "keeper angles" had not been installed and the beams were not secured in any other way.

The erector had built portions of three floors rather than completing all the work on one floor at a time. As a result, the east half of the new sections were without interior columns and cross beams which would have provided lateral bracing for the outside columns. These outer columns bore the weight, not only of the steel beams and trusses which had been erected, but also of large bundles of steel decking which were placed on the beams at each floor level. The outside columns were held upright only by temporary "clip angles" provided by the fabricator to facilitate the alignment and welding of the top columns to the columns below.

After the accident, suit was brought against the owners of the hospital, the fabricator and the architect by the injured worker and representatives of the estates of the deceased workers. The case (three cases were consolidated) went to jury trial with the architect as the sole defendant, the other defendants having been released from the lawsuit by dismissals and summary judgments. After plaintiffs and defendant rested, the trial court directed a verdict for the architect. The Court of Appeals, in reversing the lower court, determined that the architect did owe a duty to the workers, in that the architect "undertook to supervise the construction project." With this, we disagree.

Architects are required to exercise ordinary professional skill and diligence and to conform to accepted architectural standards. Because an architect's undertaking does not imply a guarantee of perfect plans or results, he is liable only for failure to exercise reasonable care and professional skill in preparation and execution of plans *according to their contract. Smith v. Goff,* 325 P.2d 1061 (Okla.1958). (emphasis added). This principal was reaffirmed in *Wills v. Black & West, Architects,* 344 P.2d 581 (Okla.1959) in which we looked to the contract between the parties to determine the responsibilities of the architect. It is stated in 5 Am.Jur.2d Architects § 5 (1962) that:

"(t)he employment of an architect is ordinarily a matter of contract between the parties, and the terms of such employment are governed by the terms of the contract into which they entered. The architect's duties may be limited to the preparation of plans and specifications, or they may include, in addition, the supervision of construction."

At common law, privity of contract was required before an action in tort could arise from a breach of duty created by a contract. However, in *Truitt v. Diggs,* 611 P.2d 633 (Okla.1980), we indicated that in cases involving physical injury to third parties, that restriction has in many cases been eliminated or modified. Therefore, it is possible for an architect to be liable for injuries received by a person with whom he has no privity, but there can be no standard rule. The determination must be made by considering the nature of the architect's undertaking and his conduct pursuant thereto.

To do so in the present case, we must look to the contract which actually consists of several separate documents. Pertinent pro-

visions of the General Conditions of the Contract for Construction are set forth below.

2.2.4 The Architect will make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an architect, he will keep the Owner informed of the progress of the Work, and will endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. *The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents.* (emphasis added).

4.3 SUPERVISION AND CONSTRUCTION PROCEDURES

4.3.1 The Contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, and sequences and procedures and for coordinating all portions of the Work under the Contract.

4.13.1 By approving and submitting Shop Drawings and Samples, the Contractor thereby represents that he has determined and verified all field measurements, field construction criteria, materials, catalog numbers and similar data, or will do so, and that he has checked and coordinated each Shop Drawing and Sample with the requirements of the Work and of the Contract Documents.

4.13.5 The Architect will review and approve Shop Drawings and Samples with reasonable promptness so as to cause no delay, but only for conformance with the design concept of the Project and with the information given in the Contract Documents. The Architect's approval of a separate item shall not indicate approval of an assembly in which the item functions.

10.2 SAFETY OF PERSONS AND PROPERTY

10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

.1 all employees on the Work and all other persons who may be affected thereby; . . .

10.2.2 The Contractor shall comply with all applicable laws, ordinances, rules, regulations and lawful orders of any public authority having jurisdiction for the safety of persons or property or to protect them from damage, injury or loss. He shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities.

■ Appellants maintain that the trial court was in error when he directed a verdict against them because the architect owed a duty to them to exercise ordinary professional skill and diligence in preparing and approving plans for construction, and therefore the question of the alleged violation of that duty should have been submitted to the jury.

We must determine if, under the contractual provisions set out above, the architect had such a duty.

Section 4.3.1 of the General Conditions specifies that the contractor is to supervise the work, being "solely responsible for all construction means, methods, techniques, and sequences and procedures". Although the architect is to periodically visit the construction site, § 2.2.4 provides that he is not required to make "exhaustive or continuous on-site inspections to check the quality or quantity of the work". It goes on to exclude from the architect's responsibilities those which are outlined in 4.3.1 as belong-

 

ing solely to the contractor. It should also be noted that the owners of the hospital employed an engineer as the project inspector.

Article 10, entitled "Protection of Persons and Property" contains provisions which require the contractor to protect workmen from injury, comply with safety regulations and laws and designate a superintendent whose job it is to prevent accidents. It is to be noted that the responsibilities for all safety precautions and programs are assigned exclusively to the contractor.

Article 4 sets forth the procedure and purpose concerning the shop drawings which appellants contend should have included specifications for temporary bracing and connections. The shop drawings, prepared by a subcontractor, were submitted to the contractor and the architects, as required by the contract. It is the architects' approval of the shop drawings, without provision for temporary connections on the expansion joints, that appellants maintain was negligence.

However, § 4.13.4 provides that the shop drawings are submitted to the *contractor* for determination and verification of "all field measurements, field construction criteria, materials, catalog number and similar data". By approving them, he represents that he has checked each shop drawing with the requirements of the contract. And, as previously noted, § 4.3.1 of the contract makes the contractor "solely responsible for all construction means, methods, techniques, sequences and procedures".

It is apparent that the shop drawings serve more than one purpose. They are submitted to the contractor for approval regarding aspects of the construction work. But, according to § 4.13.5, *they are submitted to the architects for approval "only for conformance with the design concept of the project and with the information given in the Contract Documents".*

Therefore, it was the duty of the contractor, not the architects, to see that the shop drawings included provisions for temporary connections which fall into the categories of "field construction criteria", "construction means, methods, techniques, sequences and procedures". Since it was not the responsibility of the architects, they obviously would not be negligent in failing to require temporary connections.

Because the contractor, not the architect, was required under the contract to supervise the job and employ all reasonable safety precautions, the architects cannot be held liable for injuries sustained as a result of an unsafe construction procedure. There was no question of fact for the jury. The trial court properly directed a verdict for the architects.

The judgment of the Court of Appeals is vacated and the decision of the trial court is affirmed.

IRWIN, C.J., and LAVENDER, SIMMS, DOOLIN, HARGRAVE, OPALA and WILSON, JJ., concur.