A91A0861. YOW v. HUSSEY, GAY, BELL & DEYOUNG INTERNATIONAL, INC. et al.
(412 SE2d 565)

BEASLEY, Judge.

Yow sued for personal injuries sustained at a construction site when he stepped into an uncovered storm drain while running television cable for an employer uninvolved in the construction. He appeals the grant of summary judgment to defendant, consulting engineers (Hussey).

The parties stipulated below that Yow abandoned any claim of professional negligence against Hussey and that the only claim advanced is for common law or ordinary negligence. The issue is the liability, if any, of the architect/engineer for construction site safety. Resolution depends on the existence or lack thereof of a common law or statutory duty.

The evidence on summary judgment is construed most favorably for plaintiff/respondent Yow. In January 1985, Southern Motors of Savannah, Inc. (Southern Motors) entered into a written contract with Hussey for the firm to provide architectural and engineering services for construction of a new car dealership in Savannah consisting of two showrooms, administration offices, parts department, service department, and body shop. Hussey was also to provide design of paving for on-site parking, fencing requirements for storage vehicles and for zoning buffers, engineering services for utilities to the site and buildings, and storm drainage and sanitation/sewer as required. The contract was executed under the American Institute of Architects' "Abbreviated Form of Agreement Between Owner and Architect, For Construction Projects of Limited Scope, 1978 Edition."

Carson was engaged by Southern Motors as the general contractor. The agreement was executed on AIA's "Standard Form of Agreement Between Owner and Contractor, where the basis of payment is a Stipulated Sum, 1977 Edition." Carson subcontracted with Clay-Ric to oversee the construction of a storm drain system. Clay-Ric subcontracted with Dyches to render certain site preparation services.

In June 1987 representatives from Hussey, Carson, Clay-Ric, Dyches and the City of Savannah met at the construction site at an existing uncovered drainage inlet box, the one into which Yow later stepped, to investigate either placement of a new cover or replacement of a former grate on the box. The grate that had previously cov-

ered the inlet box was removed by Dyches incident to construction activities. Hussey and a City of Savannah compliance officer instructed Clay-Ric and Dyches to replace the grate or cover. The storm drain inlet was uncovered a month later when Yow stepped into it.

Yow filed the present amended recast action against Hussey, Clay-Ric and Dyches alleging that after the storm drain system was completed by Clay-Ric, the defendants were aware that the storm drain cover that had been removed would have to be replaced with a new cover that would meet city code requirements; that despite the fact defendants were aware in June that the storm sewer inlet lacked a cover, they failed and refused to replace one because of their inability to determine who would actually pay its cost; that at least 30 days prior to plaintiff's injury, defendants knew the cover needed replacing; and that because of defendants' negligence and/or wilful and wanton misconduct, they failed to replace the cover or warn plaintiff of the existence of a dangerous condition prior to his injury. Plaintiff's stated theory of recovery against Hussey was that it "owed a common law duty not to permit the continuation of the existence of an inherently dangerous condition which constituted a nuisance."

The question of an architect/engineer's negligence liability, other than professional negligence, for injuries and/or death at the construction site appears to be undecided by Georgia appellate courts. Other jurisdictions have concluded that such negligence liability is dependent upon the architect/engineer's contractual rights and responsibilities in regard to supervision of the construction site. See generally 59 ALR3d 869, 25 AmJur2d 688. Liability for the negligent performance of supervisory duties is separate and distinct from any liability for negligently performing the actual building or design. In the absence of the contractual right or responsibility to supervise and control the construction work including site safety, the architect/engineer should incur no liability for injuries to workmen proximately caused by ordinary negligence at the site. See, e.g., *Young v. Eastern Engineering & Elevator Co.*, 554 A2d 77 (Pa. 1989); *Swartz v. Ford, Bacon & Davis Constr. Corp.*, 469 S2d 232 (Fla. 1985); *Welch v. Grant Dev. Co.*, 466 NYS2d 112, 115 (1983); *Waggoner v. W & W Steel Co.*, 657 P2d 147 (Okla. 1982); *Vorndran v. Wright*, 367 S2d 1070 (Fla. 1979); *Kelly v. Northwest Community Hosp.*, 384 NE2d 102 (Ill. 1978); *Wheeler & Lewis v. Slifer*, 577 P2d 1092 (Colo. 1978). The logic behind such a rule is that one should not be held responsible for that over which one does not exercise any control. Such reasoning has been applied by the Georgia Supreme Court in regard to architects and builders in an earlier assessment of the state and federal constitutionality of former Code Ann. § 3-1006, now OCGA § 9-3-51, in *Mullis v. Southern Co. Svcs.*, 250 Ga. 90, 91 (3) (296 SE2d 579) (1982).

If there is contractual responsibility for supervision of the construction site, jurisdictions are divided on the imposition of architect/engineer liability for injuries sustained by workmen because of unsafe site conditions. One view imposes liability when the architect/engineer has extensive supervisory duties including the right to stop work. The other view requires a clear assumption of duty by the architect/engineer in order to impose liability. See *Welch*, supra at 113.

Hussey's situation is more remote than that contemplated in much of the examined foreign case authority, as it does not involve a construction worker injured on the job but injury to a workman unrelated to the construction project. Nevertheless, the relevant inquiry as to liability in this context is the allocation of responsibility for construction site safety. The threshold determination is the scope of Hussey's contractual obligations on the project.

The AIA contracts "General Conditions of the Contract for Construction," which were a part of the agreement between Hussey and Southern, included the following provisions:

## ARCHITECT

\* \* \*

"§ 2.2.2 The Architect will visit the site at intervals appropriate to the stage of construction to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. However, the Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of his on-site observations as an architect, he will keep the owner informed of the progress of the Work, and will endeavor to guard the owner against defects and deficiencies in the Work of the Contractor.

\* \* \*

"§ 2.2.4 The Architect will not be responsible for and will not have control or charge of construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract Documents. The Architect will not be responsible for or have control or charge over the acts or omissions of the Contractor, Subcontractors, or any of their agents or employees, or any other persons performing any of the Work.

* * *

# CONTRACTOR

* * *

## Supervision and Construction Procedures

"§ 4.3.1 The contractor shall supervise and direct the Work, using his best skill and attention. He shall be solely responsible for all construction means, methods, techniques, sequences and procedure and for coordinating all portions of the Work under the Contract.

"§ 4.3.2 The Contractor shall be responsible to the owner for the acts and omissions of his employees, Subcontractors and their agents and employees, and other persons performing any of the Work under a contract with the Contractor.

* * *

## PROTECTION OF PERSONS AND PROPERTY

"10.1 Safety Precautions and Programs

"§ 10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work.

"10.2 Safety of Persons and Property

"§ 10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to:

".1   all employees on the Work and all other persons who may be affected thereby; . . .

".3   other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, roadways, structures and utilities not designated for removal, relocation or replacement in the course of construction.

* * *

"§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable safeguards for safety and protection, including posting danger signs and

other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities."

The "Agreement Between Owner and Architect" (abbreviated form) provided that "the Architect shall provide administration of the" construction contract. It also contained a provision (§ 1.4.4) which was substantially the same as § 2.2.2 of the General Conditions as quoted above.

The contract provisions, viewed in the context of the agreement as a whole, show that Hussey as architect/engineer did not expressly or impliedly have control over or assume any responsibility for construction site supervision or safety, including alerting construction workers and others affected by the construction of potential hazards at the site. Under this circumstance of a total absence of contractual responsibility for site supervision and safety, Hussey could not be held liable in tort for claims of common law simple negligence regarding site safety. Nor did knowledge raise a duty to assure that a cover was promptly placed on the box. Hussey did not occupy any position giving rise to the duty which Yow claims was unfulfilled. Summary judgment in favor of Hussey was demanded as a matter of law.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED NOVEMBER 1, 1991 —
RECONSIDERATION DENIED NOVEMBER 19, 1991 —

Karsman, Brooks & Callaway, Stanley Karsman, Stanley E. Harris, Jr., for appellant.

Painter, Ratterree, Connolly & Bart, R. Clay Ratterree, Catherine N. Clutter, Kent, Rackett & Nelson, A. Martin Kent, R. Nathaniel Rackett III, Cail & Cail, Kenneth H. Cail, Bouhan, Williams & Levy, Frank W. Seiler, Peter D. Muller, Wiseman, Blackburn & Futrell, Miriam D. Lancaster, for appellees.