A92A1685. HENRY ROY PORTWOOD, INC. v. SMITH et al.
(429 SE2d 143)

POPE, Chief Judge.

On September 20, 1988, LeRoy Smith, an employee of B & A Roofing Company, Inc. ("B & A Roofing") was injured while performing a reroofing job at the West Georgia Technical Institute ("West Georgia Tech"). At the time of his injury, Smith was using a metal handle mop to mop tar on an area of roof. He received an electrical shock when the mop's handle touched a power line running from an electrical transformer located on the roof. Smith and his wife initially filed suit against several defendants and later other defendants were impleaded and/or substituted. Plaintiffs eventually dismissed all defendants except Henry Roy Portwood, Inc., a roofing consultant company.[1] Portwood filed a motion for summary judgment which the trial court denied, but certified that order for immediate review. This court granted Portwood's application for interlocutory appeal.

1. Portwood argues the trial court erred in denying his motion for summary judgment because Portwood owed no duty to plaintiff. We agree and reverse the trial court's denial of Portwood's motion for summary judgment.

In September 1987, Portwood was hired by the State Board of Post Secondary Education ("State Board") to prepare specifications

---

[1] Because Henry Roy Portwood, Inc. is a closely held corporation and all actions by this defendant were the acts of its principal Henry Roy Portwood, this defendant will be hereinafter referred to as "Portwood" and personal pronouns will be used to reference it.

for reroofing and repair work for Building A of West Georgia Tech. After the Portwood specifications were approved, the State Board contracted with Torrance Construction Company ("Torrance") for the reroofing and repair work for Building A of West Georgia Tech as provided by the specifications prepared by Portwood. Torrance then hired a subcontractor, B & A Roofing.

Pursuant to Portwood's contract with the State Board he prepared a project manual for the job, which was incorporated into his professional services contract. In the specifications contained in the project manual, the term architect is defined as meaning "Henry Roy Portwood, Inc., consultant. . . ." Article E-2, Part 2.3 of the project manual sets forth the architect's responsibilities: "The architect will make periodic visits to the site to familiarize himself generally with the progress and quality of work and to determine in general if the work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an architect, he will keep the Owner informed of the progress of the work, and will endeavor to guard the Owner against defects and deficiencies in the work of the contractor. The Architect will not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the work. *The Architect will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work, and he will not be responsible for the Contractor's failure to carry out the work, in accordance with the contract documents.*" (Emphasis supplied.)

The duties of the contractor, Torrance, are set forth in Article E-4, Part 4.1 as follows: "The Contractor shall supervise and direct the work, using his best skill and attention. The Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the Contract." Article E-11 further provides: "The contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the work. He shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury, or loss to (1) all employees on the Work and other persons who may be affected thereby, (2) all the Work and all materials and equipment to be incorporated therein, and (3) other property [of] the city or adjacent thereto."

B & A Roofing assumed certain responsibilities of the contractor, Torrance, under the terms of its subcontract agreement. Section 11.1 of that agreement provides: "the Subcontractor shall be bound to the Contractor by the terms of this Agreement and of the Contract Documents between the Owner and Contractor, and shall assume toward the Contractor all the obligations and responsibilities which the Con-

tractor, by those Documents, assumes toward the Owner. . . ."

Although there are some factual disputes about exactly who was to request that the power should be turned off and when the conversation occurred, the undisputed evidence shows that at either the preconstruction conference meeting and/or the inspection of the roof area following that meeting, it was agreed that the power to the school should be shut off when roofing was performed in the area of the electrical wires. It is also undisputed that the specifications prepared by Portwood for this project required that "the contractor shall notify the owner at least four days in advance if any interruption of utilities is necessary." The only evidence that such a request was made was the testimony of the B & A roofing foreman that the day before his crew was to begin work in that area he requested that Tom Gorman, who was the West Georgia Tech employee in charge of building maintenance and grounds, and who was designated as the resident engineer inspector under the contract documents concerning this project, turn off the power. The foreman further testified that Gorman told him he could not turn off the power because the school needed the power to operate, but that he would provide covers for the wires. It is also undisputed that the power was not turned off, wire covers were not provided, and the foreman was aware the wires were "hot" and the roofers were working in a "dangerous" area. Smith disputes, however, that the foreman warned the workers of the danger as the foreman contends.

*Yow v. Hussey, Gay, Bell & DeYoung, Intl.*, 201 Ga. App. 857 (412 SE2d 565) (1991) provides controlling authority in this case. In that case we held that a party who "did not expressly or impliedly have control over or assume any responsibility for construction site supervision or safety . . . could not be held liable in tort for claims of common law simple negligence regarding site safety." Id. at 861. In *Yow*, the pertinent contract provisions contained language identical to the language used in the pertinent contract provisions in this case. In both cases, the architect's contract with the owner provided that "[t]he Architect will not be responsible for . . . construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the work. . . ." Id. at 859.

Plaintiffs argue this case does not offer controlling authority because the architect in *Yow* was actually an architect and Portwood is not. Portwood testified that he is not an architect, only a roofing consultant, and was only described in the contract documents as an architect because the Board of Regents deals with so many contractors they insisted on their representative being described as an architect so one set of documents could be used for their jobs. Plaintiffs offered no evidence to refute this testimony. The stated logic in *Yow* "is that one should not be held responsible for that over which one does not

exercise any control." Id. at 858. Thus, the rationale underlying our decision in *Yow* does not turn on the status of the party, that is, whether the party was an architect, but the contractual responsibilities of the party.

We also reject plaintiffs' argument that because Portwood knew of the danger of the low lying electrical wires and transformer located on the roof and knew people involved in the project were relying on him, he is liable to the plaintiffs. As we held in *Yow*, knowledge of a danger does not create a duty to one injured by the danger when responsibility for construction site supervision and control are contractually designated to another party.[2] Id. at 861.

2. Plaintiffs also assert that Portwood is responsible for Gorman's failure to turn off the power. Construing the evidence on the issue of the alleged request to turn off the power in the light most favorable to plaintiff, we will assume arguendo that Portwood designated Gorman as the resident engineer inspector under the contract and that there is a basis for holding him liable under a theory of respondeat superior for Gorman's actions taken pursuant to this contract. Even when the evidence is construed in this light, however, we hold there is no basis for finding Portwood liable to plaintiffs. There is no evidence that Portwood ever instructed Gorman not to turn off the power. In fact, Portwood's specifications for the project anticipated the need for an interruption of electrical service during the roofing project. The reason allegedly offered by Gorman not to turn off the power was that the school needed the power to operate, which reflects that he was acting in his role as the person in charge of building maintenance of West Georgia Tech and was concerned about the operation of the school, not the facilitation of the roofing project. Clearly, Portwood cannot be held liable for decisions Gorman made in his capacity as an employee of West Georgia Tech.

3. In light of our holding in Division 1, it is not necessary to address Portwood's remaining enumerations of error.

*Judgment reversed. Carley, P. J., and Johnson, J., concur.*

DECIDED MARCH 11, 1993.

*Swift, Currie, McGhee & Hiers, Stephen L. Cotter, Robin L. Frazer*, for appellant.
*Blackwood & Matthews, B. Randall Blackwood, Michael C.*

---

[2] The party to whom the contractual responsibility for construction site supervision and safety was ultimately transferred, the subcontractor, as the employer of plaintiff was in a better position to protect Smith from dangerous conditions on the job site than was Portwood who only periodically visited the job site, and in fact was not present at the job site on the day Smith was injured.